**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**GREGORY BROOKS**                                                            **PLAINTIFF**

**vs.**                                                    **CAUSE NO.: 1:12-CV-190-SA-DAS**

**CITY OF WEST POINT, MISSISSIPPI;**
**JIMMY BIRCHFIELD; and**
**WILLIAM SPRADLING**                                            **DEFENDANTS**

**DEFENDANTS' MEMORANDUM OF AUTHORITIES SUPPORTING THEIR**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and submit their Memorandum in Support of their Motion for Summary Judgment in this cause as follows:

**INTRODUCTION**

This 42 U.S.C. § 1983 civil rights action arises out of the arrest of Plaintiff Gregory Brooks. Plaintiff has also asserted state law claims arising out of the same incident. Plaintiff has named the arresting officers, Sergeant Jimmy Birchfield ("Officer Birchfield"), Officer William Spradling ("Officer Spradling"), as well as the City of West Point ("West Point"), as Defendants.

On January 2, Plaintiff called the West Point Police Department to request police assistance. He wanted to report a complaint of telephone harassment against his sisters. Officer Birchfield responded to Plaintiff's request. As Birchfield was in Plaintiff's driveway assisting Plaintiff with his complaint, Plaintiff became irate and disorderly and was ultimately arrested by Officer Birchfield. After Birchfield decided to arrest Plaintiff, he called for backup from Officer Spradling to assist in the arrest. Plaintiff's claim focuses on the events that led to Birchfield's decision to arrest him, as well as the acts that occurred during the arrest sequence.

1

As government officials, Officers Birchfield and Spradling are shielded by qualified immunity from any potential liability for the federal claims. West Point, Birchfield, and Spradling are also immune from the state law claims under the Mississippi Tort Claims Act. In addition, the federal claims against West Point must fail because Plaintiff cannot identify an unconstitutional policy, practice, or custom that led to his arrest. Accordingly, all Defendants are entitled to summary judgment as a matter of law.

## SUMMARY OF THE FACTS

### I.     Background of Plaintiff's Behavioral Issues Preceding The Subject Arrest

Plaintiff has had anger issues relating to Post Traumatic Stress Disorder (PTSD) since his deployment to Iraq in 2003.[1] Plaintiff testified his PTSD has caused him to have problems with paranoia, insomnia, depression, jumpiness, nightmares, anxiety, and general troubles with frustration, agitation, hostility, and lashing out.[2]

In the days leading up to Plaintiff's arrest, he had become upset because his sisters were harassing him via telephone.[3] Plaintiff's emergency room medical record reveals that he had a gradual-onset of PTSD, paranoia and insomnia that became severe and was caused by harassing

---

[1]     G. Brooks Depo. at 30-34, *attached as* Ex. "A".

[2]     *Id.* at 34-35, 48-49, and 155-156. (Examples include a previous altercation with a co-worker who made a comment about Plaintiff's son being a soccer player instead of a football player. V.A. Hospital Pre-Event Medical Records p. 2, *attached as* Ex. "B." Plaintiff testified that he "went off" on the co-worker and called him a "faggot," and that the incident resulted in an intervention by a supervisor. G. Brooks Depo. at 179-181. Plaintiff's medical records and testimony also reveal that, prior to his subject arrest, there was an incident wherein he was attempting to correct his daughter for "raising her voice at him," and he "tripped over a rug and fell on top of [his] wife," causing her to suffer a bruised lung. G. Brooks Depo. at 167-168; V.A. Hospital Pre-Event Medical Records at 38. Plaintiff reported to his mental health counselor that the incident had caused his family to "distrust him" and that they moved out of the house until he could "get some help." V.A. Hospital Pre-Event Medical Records at 5-6, 15, 27, 38. The West Point Police Department Incident Reports reveal a third altercation involving Plaintiff and his daughter on May 23, 2006, at the youth baseball field. West Point Police Department Incident Report No. 2006050448, *attached as* Ex. "C." According to the police report, Plaintiff's daughter became involved in a fight with another girl and "her father Gregory Brooks was encouraging her to fight." *Id.* at DEF-0010.

[3]     G. Brooks Depo. at 59-64, *attached as* Ex. "A".

2

phone calls the night before.[4]  The same record also reveals that he was angry, agitated and hostile.[5]

## II.     Facts of the Arrest

### i.     Plaintiff and Birchfield's Initial Encounter

On January 2, 2012, at around 9:15 a.m., Plaintiff called the West Point Police Department and requested that an officer be dispatched to his home at 3005 Deerfield Circle, West Point, Mississippi to investigate a claim of telephone harassment.[6]  According to Plaintiff, his sisters had been harassing him for days leading up to his arrest.[7]  This caused him to become agitated, upset, and stressed.[8]

The West Point Police Department dispatched Sargent Jimmy Birchfield to investigate the complaint.[9]  According to the 911 logs, Officer Birchfield arrived at Plaintiff's home at 9:28 a.m.[10]  Officer Birchfield was dressed in his police uniform and Plaintiff understood that Birchfield was an on duty officer of West Point Police Department.[11]

When Officer Birchfield arrived, Plaintiff was standing outside his house.[12]  Officer Birchfield inquired about the nature of Plaintiff's complaint, and Plaintiff stated he was getting harassing phone calls from his sisters.[13]  Officer Birchfield and Plaintiff were the only people

---

[4]     North Mississippi Medical Center Emergency Physician Record at 1, *attached as* Ex. "D".
[5]     *Id.*
[6]     G. Brooks Depo. at 59-64, *attached as* Ex. "A"; 911 Call Logs at DEF-0215, *attached as* Ex. "E".
[7]     G. Brooks Depo. at 59-64.
[8]     North Mississippi Medical Center Emergency Physician Record at 1, *attached as* Ex. "D"; G. Brooks Depo. at 59-64, *attached as* Ex. "A".
[9]     911 Call Logs at DEF-0215, *attached as* Ex. "E"; G. Brooks Depo. at 67.
[10]     911 Call Logs at DEF-0215.
[11]     G. Brooks Depo at 68.
[12]     G. Brooks Depo. at 67.
[13]     G. Brooks Depo. at 67-69, *attached as* Ex. "A"; J. Birchfield Depo. at 23-24, *attached as* Ex. "F".

present during this initial encounter in the driveway.[14] Plaintiff showed Officer Birchfield a call list and/or text messages on his phone in an effort to prove his complaint.[15]

Officer Birchfield and Plaintiff were talking in close proximity together while Officer Birchfield explained to Plaintiff the process for filing a formal complaint.[16] Specifically, Birchfield recalls telling Plaintiff that he could come to the police station and pursue charges of telephone harassment against his sister(s).[17] Birchfield went on to explain that the police would likely not extradite his sister from Atlanta, GA on a misdemeanor charge.[18]

Plaintiff does not recall the details of what was said to him, but he does recall Birchfield telling him he could not press charges.[19] According to Birchfield, Plaintiff became enraged upon hearing his options regarding pursuing charges for the telephone harassment.[20] Plaintiff admits he became "upset" at that point of the encounter.[21]

Birchfield asked Plaintiff to calm down, but Plaintiff did not comply.[22] He remained enraged and cursing loudly at Officer Birchfield in a threatening manner and in close proximity.[23] Plaintiff testified that he cannot remember whether Birchfield asked him to calm down or not.[24] Plaintiff admits he yelled at Officer Birchfield to "get the **** out of [his] yard,"[25] but testified he could not remember whether he said anything else to Officer Birchfield:

---

[14] G. Brooks Depo. at 69-70; J. Birchfield Depo. at 35, *attached as* Ex. "F".
[15] G. Brooks Depo. at 68-69.
[16] J. Birchfield Depo. at 27; G. Brooks Depo. at 69.
[17] J. Birchfield Depo. at 24-25.
[18] *Id.*
[19] G. Brooks Depo. at 69, *attached as* Ex. "A".
[20] J. Birchfield at 25-26, 45, 55-56.
[21] G. Brooks Depo. at 71-72, 75.
[22] West Point Police Department Incident Report No. 201201009 at DEF-0002, *attached as* Ex. "G"; J. Birchfield Depo. at 29, 50-51, 55-56.
[23] J. Birchfield Depo. at 55-56; West Point Police Department Incident Report 2012009 at DEF-002.
[24] G. Brooks Depo. at 71-72, 74.
[25] G. Brooks Depo. at 69.

> I can't recall what else I said to him. I don't know if I said anything else to him or not. I was upset about when he told me I couldn't press charges.[26]

Plaintiff continued to curse loudly at Officer Birchfield in an enraged state and in a loud and threatening manner.[27] Ultimately, when Plaintiff failed to comply with Birchfield's request(s) to calm down, Birchfield arrested Plaintiff for disorderly conduct.[28]

When Officer Birchfield informed Plaintiff he was under arrest for disorderly conduct, Plaintiff did not submit to the arrest order and instead stormed into his house, still enraged.[29] At that point, Officer Birchfield got into his marked police vehicle and called Officer Spradling for backup.[30] Officer Birchfield testified he moved his vehicle to the road because he perceived that Plaintiff's behavior was unpredictable and belligerent.[31]

Once inside his house, Plaintiff called the 911 dispatcher and loudly demanded to speak with West Point Police Chief Tim Brinkley.[32] When he was told that Chief Brinkley was unavailable, Plaintiff ranted angrily to the dispatcher that Officer Birchfield had tried to "court his wife."[33] Plaintiff later admitted in his deposition that this was a false statement to the dispatcher and that he was "upset" and has no recollection of anything he said on the 911 call.[34]

Meanwhile, as Officer Birchfield was awaiting backup to make the arrest, Plaintiff's wife and daughter came out of the house and approached Officer Birchfield's car to discuss the matter

---

[26] G. Brooks Depo. at 71, *attached as* Ex. "A"..
[27] J. Birchfield Depo. at 55-56, *attached as* Ex. "F"..
[28] J. Birchfield at 55-56; West Point Police Department Incident Report 201201009 at DEF-002, *attached as* Ex. "G". .
[29] J. Birchfield Depo. at 27-28, 45; G. Brooks Depo. at 80.
[30] J. Birchfield Depo. at 27-28; G. Brooks Depo. at 80.
[31] J. Birchfield Depo. at 27-28, 45.
[32] G. Brooks Depo. at 75; 911 Call Logs at DEF-0215, *attached as* Ex. "E".
[33] G. Brooks Depo. at 176 – 178; 911 Call Logs at DEF-0215-0216.
[34] G. Brooks Depo. at 176 – 178.

with him.[35]  According to Officer Birchfield, Plaintiff's wife stated that he had been in a rage all night and she had been trying to talk with him and get him to calm down but he had been in such a rage with her.[36]  According to Plaintiff's wife and daughter, Mrs. Brooks asked Officer Birchfield what was going to happen and he replied that he was about to arrest Plaintiff for disorderly conduct.[37]

> ### ii.     The Sequence to Effectuate the Arrest and Restrain Plaintiff

Officer Spradling arrived at the scene at 9:38 a.m., five minutes after Officer Birchfield called for backup.[38]  Upon Spradling's arrival, both Officer Spradling and Officer Birchfield approached Plaintiff's front door and knocked for Plaintiff to come outside.[39]

When the Officers knocked on Plaintiff's front door, Plaintiff came running and screaming out of a side door in a rage.[40]  According to Plaintiff he was in a state of shock and does not remember much of the arrest sequence.[41]  He testified that he thought "Iraqis [were] everywhere" and he thought Officers Birchfield and Spradling were "Iraqi enemy combatants.[42]  Plaintiff's wife confirmed that Plaintiff had "snapped."[43]  Spradling, being the first to encounter Plaintiff when he ran screaming from the house, made the first attempt to detain and arrest Plaintiff.[44]  Spradling took Plaintiff's arm so that it could be placed in handcuffs.[45]  As Spradling was attempting to handcuff Plaintiff, Plaintiff jerked his arm free from Spradling's grasp.[46]

---

[35]     J. Birchfield Depo. at 28-29; G. Brooks Depo. at 76-77; Jackuline Brooks Depo. at 30-31, *attached as* Ex. "H".
[36]     J. Birchfield Depo. at 29.
[37]     Jackuline Brooks Depo. at 30-31.
[38]     911 Call Logs at DEF-0216, *attached as* Ex. "E".
[39]     J. Birchfield Depo. at 56-57; W. Spradling Depo. at 16, *attached as* Ex. "J"; G. Brooks Depo. at 80.
[40]     G. Brooks Depo. at 80-81; J. Birchfield Depo. at 48, 53; W. Spradling Depo. at 16-17.
[41]     G. Brooks Depo. at 83, 88-89.
[42]     G. Brooks Depo. at 88-89.
[43]     Jackuline Brooks Depo. at 44-45.
[44]     W. Spradling Depo. at 16-17; J. Birchfield Depo. at 48; G. Brooks Depo. at 90.
[45]     J. Birchfield Depo. at 48, 53-54; W. Spradling Depo. at 18; G. Brooks at 90.
[46]     J. Birchfield Depo. at 48, 53-54; G. Brooks Depo. at 90.

Birchfield proceeded to their location to assist, but Plaintiff hit Officer Birchfield's chest with both hands causing Officer Birchfield to stumble.[47]  Plaintiff testified he was in a state of shock and did not understand that he was being detained and arrested.[48]

According to Officers Birchfield and Spradling, Plaintiff was attempting to assault Officer Birchfield.[49]  Plaintiff does not remember the arrest sequence clearly,[50] but admits that that he fully extended both of his hands and that they contacted Officer Birchfield's chest, and that Officer Birchfield "stumbled" from the blow.[51]  Officers Birchfield and Spradling continued attempting to handcuff Plaintiff, but Plaintiff continued resisting.[52]

According to the police reports and the testimony of Officers Birchfield and Spradling, Plaintiff's wife and daughter were yelling for Plaintiff to "stop resisting." [53]  According to Plaintiff, his wife and daughter were yelling "just lay down."[54]

Plaintiff eventually stopped resisting, which allowed Officer Birchfield and Officer Spradling to lower Plaintiff to the ground and handcuff him.[55]  Once handcuffed, Plaintiff was escorted to Officer Spradling's police car.[56]  According to the 911 logs, the entire arrest sequence took approximately seven minutes.[57]

---

[47]     J. Birchfield Depo. at 48, 53-54, *attached as* Ex. "F"; G. Brooks Depo. at 90, 94-95, *attached as* Ex. "A".
[48]     G. Brooks depo. at 91-92.
[49]     J. Birchfield Depo. at 48; W. Spradling Depo. at 18.
[50]     G. Brooks Depo. at 83, 88-89.
[51]     G. Brooks Depo. at 90, 95.
[52]     J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 96-97.
[53]     J. Birchfield Depo. at 52; W. Spradling Depo. at 30, *attached as* Ex. "J"; West Point Police Department Incident Report No. 2012010009, *attached as* Ex. "G".
[54]     G. Brooks Depo. at 96-97.
[55]     J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 95-97.
[56]     J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 98.
[57]     911 Call Logs at DEF-0216, *attached as* Ex. "E"..

### iii. Plaintiff's Behavior Immediately Following the Arrest

According to Spradling, as Plaintiff was being escorted to the police car he was making threatening remarks such as he was going to "make the officers pay", "sue them", and/or "have their jobs."[58] Plaintiff testified he doesn't remember whether he made these remarks but concedes it is possible he did.[59] Ultimately, Birchfield and Spradling decided to have Plaintiff transported to the hospital for medical evaluation.[60]

Plaintiff was not booked into the jail but instead transported directly from the police car to an ambulance and was taken to the North Mississippi Medical Center Emergency Room.[61] Officer Spradling escorted Plaintiff to the emergency room.[62] The medical records note that Plaintiff had to be placed in restraints and security had to be called in order to control him.[63] The medical records note that Plaintiff was uncooperative for the exam and had "no signs of injury" to his extremities.[64] Ultimately, Plaintiff had to be sedated.[65]

### SUMMARY JUDGMENT AND QUALIFIED IMMUNITY STANDARDS

The following excerpt from the recent case *Fredrick v. Jones County Board of Supervisors*, No. 2:11-CV-002244-MTP, 2013 U.S. Dist. LEXIS 129668, *7-9 (S.D. Miss. Sept. 11, 2013) sets forth the analytical framework a district court must employ when qualified immunity is raised on summary judgment:

---

[58]     W. Spradling Depo. at 18-19; West Point Police Department Incident Report No. 212201009, at DEF-0046.
[59]     G. Brooks Depo. at pp. 99-104.
[60]     W. Spradling Depo. at 23-24; G. Brooks Depo. at 120.
[61]     North Mississippi Medical Center Emergency Physician Record; J. Birchfield Depo. at 64; W. Spradling Depo. at 20-21; G. Brooks Depo. at 113, 120.
[62]     G. Brooks Depo. at 114; W. Spradling Depo. at 20-21.
[63]     North Mississippi Medical Center Emergency, Nurses Notes at p. 5, *attached as* Ex. "K".
[64]     North Mississippi Medical Center Emergency Physician Record at 2, *attached as* Ex. "D".
[65]     North Mississippi Medical Center Emergency, Nurses Notes at p. 5 (noting Haldol 5mg administered in "L(UL)" – meaning left upper leg).

"**[1.] Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' When ruling on a motion for summary judgment, the court must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor.

The party seeking summary judgment bears the burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact.' 'A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' Once the moving party meets its burden, the nonmoving party must then 'come forward with specific facts showing a genuine factual issue for trial.'

**[2.] Qualified Immunity**

Under 42 U.S.C. § 1983, a state official acting 'within the scope of [his or her] discretionary authority' is entitled to qualified immunity. The doctrine of qualified immunity is an 'immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' In determining whether an official is entitled to qualified immunity, the district court must decide whether the facts alleged by the plaintiff show that the defendant official violated a constitutional right and whether that right was clearly established at the time of the official's alleged misconduct. A court must enter judgment in favor of the official unless his or her conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'

A defense of qualified immunity *alters the usual burden of proof in the context of summary judgment.* Once an official pleads qualified immunity*, the burden shifts to the plaintiff,* who **_must_** then 'rebut the defense by establishing a genuine fact issues as to whether the official's allegedly wrongful conduct violated clearly established law.' **_The plaintiff must essentially show that no reasonable officer could have believed his actions were appropriate_**.

(citations omitted.) (emphasis added).

9

## ARGUMENT AND AUTHORITIES

Plaintiff has sued Officers Birchfield and Spradling in both their official and individual capacities.[66]  He has also named the City of West Point.[67]  Plaintiff will be unable to meet his burden to show that Birchfield and Spradling are not entitled to qualified immunity.  Accordingly, Officers Birchfield and Spradling are entitled to judgment as a matter of law on all federal claims.  Both Birchfield and Spradling are exempt from liability on all state law claims under the Mississippi Tort Claims Act.

Summary judgment should be granted on all federal claims against West Point because Plaintiff has failed to identify an unconstitutional custom, policy or procedure that was the moving force behind his alleged injuries; nor does one exist.  West Point is also entitled to judgment as a matter of law as to the state law claims because West Point is immune to suit under the Mississippi Tort Claims Act.

### I.  Plaintiff's Claims Pursuant To 42 U.S.C. § 1983 Fail As A Matter Of Law

In the instant case, Plaintiff has alleged the following Constitutional violations: (i) violation of his Fourth and Fourteenth Amendments "to be free from unreasonable seizure of her person and to freedom from the use of unreasonable, unnecessary, and excessive force;"[68] and (ii) violation of his First Amendment as a "result of retaliatory animus on the part of Birchfield for Plaintiff's exercise of his right to free speech. . ."[69]

---

[66]    *See* Amended Compl. at ¶ 6 [Doc. 46].
[67]    *See* Amended Compl. [Doc. 46].
[68]    *See* Amended Complaint ¶ 29 [Doc. 46].
[69]    *Id.* at ¶¶ 30.

A. *Fourteenth Amendment:* **Plaintiff Has Not Alleged A Cognizable Fourteenth Amendment Claim.**

Plaintiff claims Fourteenth Amendment violations stemming from an alleged false arrest and excessive use of force.[70] "While the Fifth Circuit has stated and continues to state that the right to be free from an illegal or false arrest is protected under the Fourth and Fourteenth Amendments to the Constitution," the Supreme Court, as well as the Fifth Circuit, have held that "pretrial deprivations of liberty are actionable *only under the Fourth Amendment* and not under the substantive due process guarantees of the Fourteenth Amendment."[71] In *Foster v. Covington County,* the district court dismissed plaintiff's Fourteenth Amendment claims because "the plaintiff [had] made no allegations of procedural due process violations, *post-arrest*, which would be cognizable under the Fourteenth Amendment . . ."[72]

Indeed this Court has held, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"[73] This Court further relied on Supreme Court precedence to hold that "'all claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'"[74]

---

[70]     *See* Amended Compl. at ¶ 29 [Doc. 46] ("The actions and omissions of the Defendants violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure of her person and to freedom from the use of unreasonable, unnecessary, and excessive force.").

[71]     *Foster v. Covington County,* No. 2:04cv343KS-MTP, 2007 U.S. Dist. LEXIS 6702, *10-11 (S.D. Miss. Jan. 30, 2007) (emphasis added).

[72]     *Id.* (emphasis added).

[73]     *Bonney v. Leflore County,* No. 4:11-cv-107-SA-JMV, 2012 U.S. Dist. LEXIS 135154, *11 (N.D. Miss. September 21, 2012) (quoting *Albright v. Oliver,* 510 U.S. 266, 273 (1994)).

[74]     *Id.* (quoting *Graham v. Conner,* 490 U.S. 386, 395 (1989)).

11

Here, Plaintiff does not allege post-arrest procedural due process violations. Plaintiff only mentions the Fourteenth Amendment in his Complaint and Amended Complaint in the context of false arrest and excessive force.[75] In response to Defendants' Interrogatories asking Plaintiff to explain separately and in detail how and why he contends each Defendant is liable, Plaintiff stated that he "relies upon the allegations made in his Complaint."[76] Thus Plaintiff has not alleged, nor has he pursued, a separate claim for post-arrest due process violations. Because Plaintiff's Constitutional claims based on alleged false arrest and alleged use of excessive force are not cognizable under the Fourteenth Amendment, Defendants are entitled to summary judgment on Plaintiff's putative Fourteenth Amendment claim.[77]

## B. Plaintiff's § 1983 Claims Against Birchfield And Spradling Are All Foreclosed by Qualified Immunity.

"To prevail on a section 1983 claim, the plaintiff must prove that a person acting under color of law deprived him of a right secured by the Constitution or laws of the United States."[78] "When a plaintiff names a police officer in his individual capacity, the plaintiff is seeking 'to impose personal liability upon [the officer] for actions he takes under color of state law."[79] "The defense of qualified immunity is available to an official sued in his individual capacity."[80] "Qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions . . ."[81]

---

[75]     *See* Compl. at ¶ 29 [Doc. 1]; Amended Compl. at ¶ 29 [Doc. 46].
[76]     *See* Plaintiff's Response to Defendants' Interrogatory No. 10, *attached as* Ex. "L".
[77]     *See Foster v. Covington County,*, 2007 U.S. Dist. LEXIS 6702, *11 ("The Fourth Amendment is adequate to vindicate the rights [of constitutional violations for false arrest] asserted by plaintiff.").
[78]     *Maas v. Moran*, No. 1:11CV287-LG-RHW, 2013 U.S. Dist. LEXIS 116222, *12 (S.D. Miss. Aug. 16, 2013) (citations omitted).
[79]     *Bolton v. City of Gulfport*, No. 1:10-cv-297HSO-JMR, 2012 U.S. Dist. LEXIS 173818, *36 (S.D. Miss. December 7, 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).
[80]     *Id.*
[81]     *Id.* (citing *Easter v. Powell*, 476 F.3d 459, 462 (5th Cir. 2006)).

"The qualified immunity analysis involves a two prong inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct."[82] "It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first."[83]

"Determining qualified immunity is a question of law for the court, not a matter of fact for the jury."[84] "The test for qualified immunity … involves, though it does not end with, the question of probable cause."[85] The test is whether any "reasonable police officer could have believed that probable cause existed for the law enforcement actions."[86] If so, summary judgment is appropriate in favor of the officers. To defeat qualified immunity, "'[a] plaintiff must allege conduct which 'shocks the conscience.'"[87]

As demonstrated below, Plaintiff will be unable to demonstrate that Birchfield and Spradling are <u>not</u> entitled to qualified immunity. Therefore, Plaintiff's federal claims against Birchfield and Spradling in their individual capacities must all fail as a matter of law.

1. *First Amendment:* **Defendants Are Entitled To Qualified Immunity - Plaintiff's Arrest Was Objectively Supported By Probable Cause.**

Plaintiff alleges Officer Birchfield arrested him in retaliation for his use of "cuss words" during their initial encounter.[88] He thus alleges retaliatory arrest in violation of his First Amendment right to criticize the state.[89] However, Plaintiff directs the Court's attention to only a single element of the disorderly conduct that led to his arrest. An evaluation of the *totality of*

---

[82]  *Id.* at *37 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[83]  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236).

[84]  *Id.* (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

[85]  *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. Tex. 2002).

[86]  *Id.*

[87]  *Bolton v. City of Gulfport.* 2012 U.S. Dist. LEXIS 173818, *36 (quoting *Murray v. Earle*, No. 06-50568, 2008 U.S. App. LEXIS 7809 WL 1744257, *5 (5th Cir. 2008)).

[88]  *See* First Amended Complaint at ¶ 30 [Doc. 46]; *See also* Plaintiff's Reply to Defendants Response to Motion to Amend at 4 [Doc. 42].

[89]  *Id.*

*the circumstances* (the required standard) demonstrates that Plaintiff's cursing was only one symptom of his disorderly conduct. Stated differently, Plaintiff would have the Court apply a laser's focus to the only aspect of his conduct that enjoys some level of constitutional protection (i.e., cursing and/or criticizing the police), and ignore the totality of the circumstances that prompted the arrest.

Officer Birchfield made the initial decision to arrest Plaintiff based on the charge of disorderly conduct.[90] The applicable Mississippi statute regarding disorderly conduct provides:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to: [a]ct or do or refrain from acting or doing as ordered, requested or commanded by said officer … shall be guilty of disorderly conduct.[91]

"Probable cause exists 'when the totality of the facts and circumstances *within a police officer's knowledge at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[92] Again, "[t]he test for qualified immunity … involves, though it does not end with, the question of probable cause."[93] Under the applicable standard, Plaintiff "must show that the officers could not have *reasonably* believed that they had probable cause to arrest the plaintiff for any crime."[94]

---

[90]    *See* J. Birchfield at 55-56, *attached as* Ex. "F"; West Point Police Department Incident Report No. 201201009 at DEF-0002, *attached as* Ex. "G".

[91]    Miss. Code Ann. § 97-35-7 (2013).

[92]    *McAllister v. Desoto* County, 470 Fed. Appx. 313, 318-319 (5th Cir. 2012) (emphasis added) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)).

[93]    *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. Tex. 2002).

[94]    *McAllister v. Desoto* County, 470 Fed. Appx. 313, 318.

14

At the time of the arrest incident in question, Officer Birchfield was dressed in police uniform and Plaintiff recognized him to be a law enforcement officer.[95] Birchfield arrived at Plaintiff's home in response to Plaintiff's request for police assistance.[96] Plaintiff and Birchfield were discussing Plaintiff's complaint for telephone harassment when Plaintiff suddenly became irate and irrational.[97] Birchfield attempted to calm Plaintiff down, but Plaintiff refused and his temper continued to escalate.[98] According to Officer Birchfield, Plaintiff was unpredictable, unexplainable, and belligerent.[99] Plaintiff screamed for Birchfield to "get the *** out of [his] yard."[100] Plaintiff then continually shouted at Officer Birchfield in a threatening demeanor and in close proximity to Officer Birchfield.[101] Plaintiff admits he was standing within a close enough distance to have just shown Officer Birchfield the text messages on his cell phone.[102] Birchfield repeatedly asked Plaintiff to calm down and warned him that he would be arrested for disorderly conduct, but Plaintiff continued shouting and cursing near Officer Birchfield and in a loud, threatening, and belligerent manner.[103]

Plaintiff's conduct tracks the disorderly conduct statute to its very elements. Plaintiff acted in a manner predicted to "cause or occasion a breach of the peace," and repeatedly "refused to promptly obey the request, command and order of a law enforcement officer having the authority to … arrest any person for a violation of the law."[104] Under the totality of the facts and

---

[95]     G. Brooks Depo. at 68.
[96]     G. Brooks Depo at 59-64; 911 Call Logs at DEF-0215.
[97]     J. Birchfield Depo. at 25-26, 45, 55-56, *attached as* Ex. "F"; G. Brooks Depo. at 69-72, 75, *attached as* Ex. "A".
[98]     West Point Police Department Incident Report No. 201201009 at DEF-002, *attached as* Ex. "G"; J. Birchfield Depo. at 29, 50-51, 55-56,.
[99]     *See* J. Birchfield Depo. at 27-28, 45, 55-56
[100]    G. Brooks Depo. at 68-72.
[101]    J. Birchfield Depo. at 27, 55-56; G. Brooks Depo. at 69; West Point Police Department Incident Report No. 201201009 at DEF-002.
[102]    G. Brooks Depo. at 69.
[103]    West Point Police Department Incident Report No. 201201009; J. Birchfield Depo at 29, 50-51, 55-56.
[104]    Miss. Code Ann. § 97-35-7 (2013).

circumstances at the moment of arrest, it was objectively reasonable for Officer Birchfield to conclude that Mr. Brooks was disorderly. Although speech may be protected, no one has a right to maintain a belligerent and threatening demeanor toward a police officer in close proximity when ordered to cease.[105]

Chief Lindsey Horton of the Jackson, Mississippi Police Department has been designated by Defendants as an expert in the area of arrests and arrest procedures. As recognized by Chief Horton, Officer Birchfield received training to "perceive when a person is acting in a manner incongruent with normal social behavior that could potentially pose a threat to himself, his family, and/or the public at large."[106] Upon reviewing the facts of the arrest and in response to Plaintiff's demeanor toward Officer Birchfield, Chief Horton opined as follows:

> [A]ny reasonable officer would have had probable cause to believe Mr. Brooks was acting disorderly. Mr. Brooks had an inability and/or unwillingness to control himself. Mr. Brooks was enraged and cursing at Officer Birchfield. His voice was loud and threatening, both physically and implicitly, toward Officer Birchfield while in close proximity to Officer Birchfield. After being asked to calm down, Mr. Brooks did not comply and continued to yell at Officer Birchfield in an irate manner.[107]

Plaintiff does not dispute these facts. Plaintiff testified he does not remember what he said to Officer Birchfield:

---

[105]     The fact that Mr. Brooks was criticizing the police is to no avail. Arrestees often criticize and curse the police in the course of an arrest. The law is clear that choosing to curse or criticize the police does not insulate a person from arrest for ancillary criminal conduct. "If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, *no matter how clearly established that speech may be protected by the First Amendment.*'" *Massey v. Wharton*, 477 Fed. Appx. 256, 263 (5th Cir. 2012). (emphasis added) (quoting *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)); *See also Ashcraft v. City of Vicksburg*, 2013 U.S. Dist. LEXIS 88206, *18-19 (Relying on the Supreme Court's recent holding in *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012), "this Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the arrest].") (And finding that a plaintiff's First Amendment claim failed because defendants were entitled to qualified immunity because probable cause existed.). The Supreme Court has held that even a retaliatory arrest is proper if supported by probable cause. *Reichle v. Howards*,132 S. Ct. 2088, 2093 (2012).

[106]     *See* L. Horton Report at 6, *attached as* Ex. "M".

[107]     *See* L. Horton Report at 7.

> I can't recall what else I said to him. I don't know if I said anything else to him or not. I was upset about when he told me that I couldn't press charges, being a person that several people falsely charged me, you know. And I just couldn't believe that he said that.[108]

Again, the protection of qualified immunity does not require a finding of probable cause. If the Court merely finds that "reasonable officers could debate whether or not probable cause existed under all the facts, then [defendant] would be entitled to qualified immunity and summary judgment."[109] The Fifth Circuit has cautioned that officers, in making a determination of probable cause, are neither required to be perfect nor do they always have to err on the side of caution "out of fear of being sued."[110] To deny Defendants Birchfield and Spradling the protection of qualified immunity, Plaintiff must not only prove to the Court that there was no probable cause for the arrest, but that there is no room for reasonable officers to debate the propriety of the arrest. Under the facts of this case, Plaintiff falls far short of this standard, and Defendants Birchfield and Spradling are entitled to summary judgment on the basis of qualified immunity.

### a. Plaintiff Has No Cognizable First Amendment Claim Against Officer Spradling.

Officer Spradling was not present during the initial encounter when Officer Birchfield decided to arrest Plaintiff for disorderly conduct. Spradling was merely called for backup to assist Birchfield in the arrest. Because Spradling did not witness the encounter that led to the charge of disorderly conduct, there is no argument that Spradling violated Plaintiff's First Amendment rights. Even under a § 1983 theory of bystander liability, plaintiff can only prevail

---

[108] G. Brooks Depo. at 71.
[109] *Payne v. Dickerson*, No. 3:07CV3-WAP-JAD, 2008 U.S. Dist. LEXIS 119502, *16-17 (N.D. Miss. March 26, 2008).
[110] *Pattman v. Miss. Dep't of Pub. Safety*, No. 3:09CV570HTW-LRA, 2012 U.S. Dist. LEXIS 130617, *21 (S.D. Miss. September 13, 2012) (quoting *Martin v. Thomas*, 973 F. 2d 449, 453 (5th Cir. 1992)).

if "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'"[111]  "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in 'the alleged constitutional violation.'"[112;113]  Indeed, [p]ersonal involvement is an essential element of a civil rights cause of action."[114]  Therefore, any First Amendment claim fails against Officer Spradling on the additional grounds that Officer Spradling was not present when Birchfield made the decision to arrest Plaintiff.[115]  Because he was merely called for backup after the initial encounter, he cannot be held liable for a First Amendment violation.

>    **2.**  ***Fourth Amendment*: Because Birchfield and Spradling Had Probable Cause For All Of The Arrest Charges And Only Reasonable Force Was Used, Plaintiff's Fourth Amendment Claim Fails As A Matter Of Law.**

Plaintiff also alleges Defendants violated his Fourth Amendment right based upon a purported false arrest and use of excessive force.[116]  At this stage, it is the Court's role to determine whether Plaintiff has asserted a cognizable Fourth Amendment violation.[117]  In order to state a cognizable violation of a Fourth Amendment right to be free from false arrest, "the Plaintiff must show that the Defendant[s] lacked probable cause."[118]  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the

---

[111]      *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty. Md.*, 302 F.3d 188, 204 (4th Cir. 2002)).

[112]      *Id.* at 647 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

[113]      Note also, that although most bystander liability claims apply in the context of excessive force claims, "other constitutional violations may also support a theory of bystander liability." *Id.* at ft. n. 11.

[114]      *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[115]      *See* G. Brooks Depo. at 67-70 (Confirming only he and Officer Birchfield were present during the initial encounter).

[116]      *See* Amended Complaint at 29 [Doc. 46].

[117]      *Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *7-9 (S.D. Miss. March 26, 2013).

[118]      *Woods v. Spellman*, No. 4:07CV94-SA-DAS, 2010 U.S. Dist LEXIS 61538, *8 (quoting *Sorenson v. Ferrie*, 134 F.3d 325, 328).

moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offence."[119]  The Court must review the facts surrounding the arrest, and determine whether the Officers' actions were objectively unreasonable.[120]

In addition, Officers Birchfield and Spradling have, again, both asserted the defense of qualified immunity, which "'protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent [places] the statutory or constitutional question *beyond debate*.'"[121]  Once qualified immunity is asserted, 'the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime.'"[122]  "If reasonable officers could debate whether or not probable cause existed under all the facts, then [defendant is] entitled to qualified immunity and summary judgment."[123]  Further, "['l]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity.'"[124]  Here, Plaintiff's arrest was supported by probable cause, and he certainly cannot show that his arrest *undoubtedly* lacked probable cause.  Accordingly, Plaintiff's Fourth Amendment claim stemming from an alleged false arrest fails as a matter of law.

---

[119]     *Woods v. Spellman*, 2010 U.S. Dist LEXIS 61538, *8 (quoting *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008)).

[120]     *See Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *8-9 (S.D. Miss. March 26, 2013) (Where Plaintiff alleged Fourth Amendment theories of liability for, *inter aliai*, false arrest and excessive force, the court held "[t]here was no doubt that in August 2009, the relevant law of these [] areas of law was clearly established." The court therefore, focused its discussion "on whether the Officers' conduct was objectively unreasonable.")

[121]     *Russell v. City of Magee*, No. 3:11-CV-637-CWR-LRA, 2013 U.S. Dist. LEXIS 42343, *8 (S.D. Miss. March 26, 2013) (emphasis in original) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

[122]     *Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *21 (S.D. Miss. March 26, 2013) (quoting *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010)).

[123]     *Payne v. Dickerson*, 2008 U.S. Dist. LEXIS 119502, *16-17 (N.D. Miss. March 26, 2008).

[124]     *Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *21 (S.D. Miss. March 26, 2013) (quoting *Club Retro , L.L.C v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009)).

### i.   Defendants Had Probable Cause To Arrest Plaintiff For Disorderly Conduct.

As demonstrated above, Defendants had probable cause to arrest Plaintiff for disorderly conduct.  Defendants will not re-brief the existence of probable cause for Plaintiff's charge of disorderly conduct.  Defendants adopt and reincorporate by reference the previous sections of their Brief addressing that claim.  Because Officers Birchfield and Spradling undoubtedly had probable cause to arrest Plaintiff under Mississippi's disorderly conduct statute, Defendants are entitled to qualified immunity and Plaintiff's Fourth Amendment claim for false arrest fails as a matter of law.

### ii. Defendants Had Probable Cause To Arrest Plaintiff For Resisting Arrest.

Under Mississippi law, a person resists an arrest when the person obstructs or resists his lawful arrest, by force, violence, threats, or in any other manner.[125]  During the subject arrest sequence, Plaintiff resisted multiple times.  Perhaps the best recitation and analysis of Plaintiff's resistance to the arrest is found in the expert report of Chief Lindsey Horton.  As explained by Chief Horton, Plaintiff first resisted his arrest when he ignored Officer Birchfield's verbal command that he was under arrest for disorderly conduct and instead proceeded into his house.[126]  Plaintiff next resisted arrest when he sprinted out of a side door screaming rather than answering the front door where Spradling and Birchfield were requesting Plaintiff's presence.[127]  Plaintiff then continually resisted Officer Spradling and Birchfield's physical attempts to gain control of him and refused their commands to submit to handcuffs.[128]

---

[125]   *See* Miss. Code Ann. § 97-9-73 (2013).
[126]   *See* L. Horton Report at 7.
[127]   G. Brooks Depo. at 80-81; J. Birchfield Depo. at 48; W. Spradling Depo. at 16-17.
[128]   J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 96-97.

Plaintiff's own version of the arrest demonstrates his resistance.[129] Plaintiff admits he ignored Officer Birchfield's order to submit to arrest and instead stormed inside the house.[130] He admits to jerking his hand away from Spradling as Spradling was attempting to handcuff him.[131] This Court has held that the removal of a plaintiff's hand from an officer's grasp constitutes resisting arrest.[132] Accordingly, an officer has probable cause to arrest an individual for resisting arrest when he pulls free from an officer who is trying to handcuff him.[133]

Plaintiff admitted he continued resisting:

Q. Why couldn't – you said one was pulling you one way and one was pulling you the other? . . . But they couldn't get you down?

A. They couldn't get me down. . . I was standing up.[134]

Officers Spradling and Birchfield testified Plaintiff's wife and daughter were yelling for Plaintiff to "stop resisting."[135] Plaintiff concedes his wife and daughter were yelling for him to "just lay down."[136]

Accordingly, Birchfield and Spradling had probable cause to arrest Plaintiff for resisting arrest. Defendants are entitled to qualified immunity and Plaintiff's claim that his Fourth Amendment was violated due to a false arrest further fails as a matter of law.

---

[129] *See* Amended Compl. at ¶ 21 [Doc. 46].
[130] G. Brooks Depo. at 80.
[131] G. Brooks Depo. at 90. In hindsight, Plaintiff alleges he was trying to protect himself. *Id*. This Court has noted, "the [resisting arrest] statute does not factor in intent." *Woods v. Spellman*, 2010 U.S. Dist. LEXIS 61538, *10-11. "The statute merely provides that a person is guilty of resisting arrest when he 'obstructs or resists by force, or violence, or threats, or in any manner, his lawful arrest . . ." *Id*.
[132] *Id.* at *11 ("Here, even though Plaintiff did not use real force, violence or threats, the removal of his hand from [Defendant's] grasp constitutes 'any other manner' in which he obstructed his lawful arrest.").
[133] *Id.* ("Therefore, the Court concludes [Defendant] had probable cause to arrest Plaintiff for resisting arrest, so there is no violation of Plaintiff's Fourth Amendment rights. . .").
[134] G. Brooks Depo. at 96.
[135] J. Birchfield at 52; W. Spradling at 30, *attached as* Ex. "J"; *See also* West Point Police Incident Report No. 20120009, *attached as* Ex. "G".
[136] G. Brooks Depo. at 96-97.

### iii. Defendants Had Probable Cause To Arrest Plaintiff For Simple Assault On A Police Officer.

Plaintiff admits hit Officer Birchfield's chest with both hands and that Officer Birchfield "stumbled" from the blow.[137] These actions constitute probable cause for simple assault on a police officer. Miss. Code Ann. Section 97-3-7 provides that a person is guilty of simple assault upon a law enforcement officer if he *attempts* to cause or purposely, knowingly, or recklessly causes bodily injury to a law enforcement officer who is acting within the scope of his duty, office or employment.[138]

All parties agree that when Spradling was attempting to handcuff Plaintiff and Birchfield was approaching to assist, Plaintiff pulled his hand from Spradling's grasp and hit Birchfield's chest with both hands. The facts within Birchfield and Spradling's knowledge at the time of the arrest undoubtedly gave them probable cause to arrest Plaintiff for simple assault on a police officer. Because Birchfield and Spradling had probable cause to arrest Plaintiff for simple assault on a police officer, Plaintiff's Fourth Amendment claim further fails as a matter of law.

### a. Plaintiff's Claim For Excessive Force Fails As A Matter Of Law.

In order to state a cognizable Fourth Amendment excessive force claim, Plaintiff must demonstrate that Officer Birchfield and Officer Spradling's actions against him were objectively unreasonable.[139] Because Officers Birchfield and Spradling have asserted qualified immunity, "whether the force used was objectively reasonable is a question of law for the Court to resolve."[140] Plaintiff cannot demosntrate that Officers Birchfield and Spradling used excessive

---

[137] G. Brooks at 90, 94-95.
[138] (emphasis added).
[139] *See Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343; *Woods v. Spellman*, 2010 U.S. Dist. LEXIS 61538,.
[140] *Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *16 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187-88 (5th Cir. 2011)).

22

force because the Officers used only the minimum amount of force necessary to gain control of Plaintiff in order to effectuate his lawful arrest.

As this Court has recognized, "[a]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[141]  Moreover, "[a]n excessive force claim is 'separate and distinct from' a claim for unlawful arrest and must therefore be analyzed without regard to whether the arrest was justified . . ."[142]

"In order to succeed on a § 1983 claim that the defendants violated his Fourth Amendment right against excessive force, a plaintiff must show that he was seized and that he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[143]

"To gauge the objective reasonableness of the force, [this Court] must balance the amount of force used against the need for force."[144]  Moreover, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[145]  And further, "the test for 'reasonableness'" on a Fourth Amendment excessive force claim requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

---

[141]      *Woods v. Spellman*, 2010 U.S. Dist. LEXIS 61538, *11 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[142]      *Massey v. Wharton*, 477 Fed. Appx. 256, 262 (5th Cir. 2012) (citing *Freeman v. Fore*, 483 F.3d 404, 413 (5th Cir. 2007)).

[143]      *Russell v. City of Magee*, No. 3:11-CV-637-CWR-LRA, 2013 U.S. Dist. LEXIS 42343, *14-15 (S.D. Miss. March 26, 2013) (quoting *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)).

[144]      *Id.* (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187-88 (5th Cir. 2011)).

[145]      *Id.* (quoting *Ballard v. Burton*, 444 F.3d 391, 402.

subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[146]

It is undisputed that Birchfield and Spradling used only the amount of force reasonably necessary to effectuate Plaintiff's arrest. Birchfield began by verbally commanding Plaintiff to submit to the arrest.[147] Plaintiff ignored the command, and went into his house.[148] As Chief Horton explained, "when Officer Birchfield made the initial decision to arrest Mr. Brooks, he employed the first and most minimal level of control: his presence in uniform and verbal command to submit to the arrest."[149]

Next, Officer Spradling arrived and Defendants knocked on Plaintiff's front door and demanded that he come outside. Plaintiff did not answer the front door and instead sprinted out of a side door, irate and screaming.[150] Defendants again ordered to submit to arrest, but he refused. It was only when Plaintiff refused all verbal orders to submit to the arrest that Birchfield and Spradling resorted to physical arrest techniques.[151] In an attempt to handcuff Plaintiff, Spradling took Plaintiff's hand and placed it behind his back in order to handcuff him.[152] Chief Horton noted this was a classic armbar arrest technique.[153] However, Plaintiff pulled free from Officer Spradling's grasp.[154] This required Birchfield and Spradling to employ the next level of force generally used to gain control of an arrestee – a double armbar

---

[146]     *Id.* at 15-16 (quoting *Hunter v. Town of Edwards*, 871 F. Supp. 2d 558, 564 (S.D. Miss. 2012)).
[147]     West Point Police Department Incident Report No. 201201009; J. Birchfield Depo. at 27-29, 45, 50-51, 55-56; G. Brooks Depo. at 80.
[148]     J. Birchfield Depo. at 27-28, 45; G. Brooks Depo. at 80.
[149]     L. Horton Report at 7.
[150]     G. Brooks Depo. at 80-81; J. Birchfield Depo. at 48, 53; W. Spradling Depo. at 16-17.
[151]     L. Horton Report at 7.
[152]     W. Spradling Depo. at 17-18; J. Birchfield Depo. at 48; G. Brooks Depo. at 90.
[153]     L. Horton Report at 7.
[154]     J. Birchfield Depo. at 48, 53-55; G. Brooks Depo. at 90.

procedure.[155]  Plaintiff testified he continued resisting.  Specifically, he testified Birchfield and Spradling were trying to lower him to the ground but he stood hard against their efforts.[156] According to the police reports and the testimony of Birchfield, Plaintiff's wife and daughter were yelling for Plaintiff to "stop resisting." [157]  Plaintiff's concedes his wife and daughter were yelling "just lay down."[158]  Plaintiff eventually stopped resisting, which allowed Officer Birchfield and Officer Spradling to finally detain him.[159]  Once the Officers were able to handcuff Plaintiff and effectuate the arrest they escorted him to Officer Spradling's police car.[160]

As Chief Horton explained, the techniques used by Birchfield and Spradling "constituted the minimum level of force required to bring Mr. Brooks under control."[161]  Plaintiff testified that Officers Birchfield and Spradling did not punch, kick or otherwise harm him.[162]  When asked to say what Birchfield and Spradling should have done differently, Plaintiff had no suggestions.[163]  Accordingly, Plaintiff cannot show that the force used to restrain him was objectively unreasonable.  It is clear the Defendants are entitled to qualified immunity and that Plaintiff's Fourth Amendment claim arising from excessive force fails as a matter of law.

---

[155]    L. Horton Report at 8.
[156]    West Point Police Department Incident Report No. 201201009; J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 96-97.
[157]    J. Birchfield Depo. at 52; West Point Police Department Incident Report No. 2012010009.
[158]    G. Brooks Depo. at 96-97.
[159]    J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 95-97.
[160]    J. Birchfield Depo. at 48-49, 52; W. Spradling Depo. at 18; G. Brooks Depo. at 98.
[161]    L. Horton Report at 8.
[162]    G. Brooks Depo. at 106.
[163]    G. Brooks Depo. at 141.

A. **Plaintiff's Official Capacity Claim Against The City of West Point And The Officers Fails As A Matter of Law**

1. **Plaintiff's Official Capacity Claims Merge With His Claims Against The City of West Point.**

According to Plaintiff's Amended Complaint, Officers Birchfield and Spradling have been sued in their "official" and "individual" capacities.[164] "For purposes of Section 1983, a claim against a municipal employee in his official capacity is 'in essence, a suit against the municipality,' and requires the same showing of a policy or custom."[165] Stated differently, "the official capacity claim is tantamount to a claim against the [city], already named as a defendant. Accordingly, the official capacity claim against [individual officers] is redundant and said claim[s] should be dismissed."[166] As such, Plaintiff's claims against Birchfield and Spradling in their official capacities will be addressed as claims against the City.

2. **Plaintiff's Claims Against The City of West Point Fail As A Matter of Law Because Plaintiff Has Failed To Allege A Policy, Custom, Or Practice That Led To His Alleged Constitutional Violations.**

"To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury."[167] "The official policy itself must be unconstitutional or, if not, must have

---

[164]     *See* Amended Compl. at ¶¶ 5-6.
[165]     *Hobgood v. Boredelon*, 1:11CV252-LG-RHW, 2013 U.S. Dist. LEXIS 81059, *17-18 (S.D. Miss. June 10, 2013) (citing *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008)).
[166]     *Burnett v. City of Southaven*, No. 2:08CV45- P-A, 2009 U.S. Dist. LEXIS 50098, *1-2 (N.D. Miss. June 15, 2009) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005)).
[167]     *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

26

been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'"[168]

Moreover, "[m]unicipal liability under § 1983 may not rest on respondeat superior, and instead must be premised upon 'some official action or imprimatur.'"[169] With regard to municipal liability under § 1983, "[o]fficial policy can arise in various forms."[170] "It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"[171] "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[172]

In *Whitley v. Hanna*, the Fifth Circuit held that "[a]ll of [plaintiff's] inadequate supervision, failure to train, and policy, or custom claims fail[ed] without an underlying constitutional violation."[173] As demonstrated in the foregoing sections, Plaintiff will be unable to show that a constitutional violation occurred. Accordingly, the City cannot be held liable.

Even if Plaintiff could establish a genuine issue of fact as to whether a constitutional right was violated (which he cannot), Plaintiff cannot demonstrate that the City had an official policy, custom, or practice that led to his alleged damages. Plaintiff's Amended Complaint merely

---

[168]    *Id.* (quoting *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 509 (5th Cir. 2004)).

[169]    *Moore v. City of Jackson*, 3:10cv454-DPJ-FKB, 2012 U.S. Dist. LEXIS 142304, *5 (S.D. Miss. October 2, 2012) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010))..

[170]    *James v. Harris*, 577 F.3d at 617.

[171]    *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579)..

[172]    *Whitley v. Hanna*, 726 F.3d 631, 649 quoting *Peterson v. City of Fort Worth*,, 588 F.3d 838, 847 (5th Cir. 2009)).

[173]    *Id.* at 648.

makes a bald assertion that the City had a policy or custom which led to a violation of Plaintiff's constitutional rights.[174]

In *Whitely v. Hanna*, the court further found that even if it assumed that Plaintiff had "sufficiently alleged a § 1983 claim, her municipal liability claims still would fail" because "[t]he proposed amended complaint makes no specific allegations of the county's policies and simply adds the words 'policies, practices, and/or customs' to [Plaintiff's] perceived wrongs."[175] "Bare allegations, offered without proof, are insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation."[176]

Plaintiff's Amended Complaint makes only a conclusory unsupported "official capacity" claim against the City.[177] Plaintiff has not put forth any facts to suggest the City had an unconstitutional policy, custom, or practice that led to his arrest. Plaintiff's claims against the City and Birchfield and Spradling in their official capacities fail as a matter of law.

## II. Plaintiff's State Law Claims Fail As A Matter Of Law Because Defendants Are Barred From Suit Pursuant To The Mississippi Tort Claims Act

Plaintiff has asserted the following state law claims: (i) false arrest and imprisonment; (ii) assault and battery; (iii) and intentional infliction of emotional distress. These claims are governed by the Mississippi Tort Claims Act ("MTCA").[178] Although "[t]he MTCA waives

---

[174]     Amended Compl. at ¶ 31 [Doc. 46].
[175]     726 F.3d 631, 649 (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (conclusory description of policy or custom insufficient)).
[176]     *Maas v. Moran*, No. 1:11CV287-LG-RHW, 2013 U.S. Dist. LEXIS 116222, *11 (S.D. Miss. Aug. 16, 2013) (citing *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997)).
[177]     Compl. at ¶ 30 [Doc. 1].
[178]     *See Felter v. Brown*, No. 5:11-cv- 46 (DCB)(MTP), 2014 U.S. Dist. LEXIS 1376, *9 (S.D. Miss. January 7, 2014); *See also Wilkinson v. Mayor & Alderman of Vicksburg*, No. 5:05-cv-94(DCB)(JMR), 2007 U.S. Dist. LEXIS 24553 (S.D. Miss. March 30, 2007) ("The MTCA is the exclusive remedy available to plaintiffs seeking damages from the state or its political subdivisions.") (citing Miss. Code Ann. § 11-46-7).

sovereign immunity as a whole for Mississippi's political subdivisions," "the MTCA retains a number of restrictions, limitations and exemptions from liability."[179]

The MTCA further provides a specific law enforcement exemption, commonly referred to as "the police function exception:"

> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury."[180]

The MTCA further provides immunity to government entity and its employees for acts "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, *whether or not the discretion be abused.*"[181]

Plaintiff admits in his Amended Complaint that Birchfield and Spradling were acting within the course and scope of their employment.[182] Therefore, Plaintiff is barred from asserting claims against Birchfield and Spradling in their individual capacities.[183] Moreover, "[a]s with § 1983 cases, a suit under the Mississippi Tort Claims Act against a government employee in his official capacity is the same as a lawsuit against the government entity." [184]

---

[179]     *Felter v. Brown*, 2014 U.S. Dist. LEXIS 1376, *9.
[180]     *Felter v. Brown*, 2014 U.S. Dist. LEXIS 1376, *9-10 (citing Miss. Code Ann. 11-46-9(1)(c)); *See also Miss. Dept. of Public Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003) (Stating that the purpose is "to protect law enforcement personnel from lawsuits arising out of the performance of their duties with respect to the victim.").
[181]     Miss. Code Ann. § 11-46-9(1)(D).
[182]     *See* Amended Compl. at ¶ 35.
[183]     *See Felter v. Brown*, 2014 U.S. Dist. LEXIS 1376, *10-11 ("[A]n individual in the course and scope of his employment can have no personal liability") (citing Miss. Code Ann § 11-46-9.); *see also Freeman v. Jackson County Sheriff's Dep't*, Civil Action No. 97-CA-001119 COA, 1998 Miss. App. LEXIS 645, *9 (Miss. Ct. App. August 18, 1998) (Holding that if an employee was acting within the course and scope of his employment then "Miss. Code Ann. § 11-46-7 dictates that the governmental entity alone must answer the charges.").
[184]     *Fleming v. Tunica County Miss.*, 497 Fed. Appx. 381, 383 fn. 2 (5th Cir. 2012).

Plaintiff is likewise barred from asserting his state law claims against the City under the MTCA. As to the "police function exception," the MTCA "provides two avenues of immunity: (1) if the plaintiff was engaged in criminal activity at the time of the incident in question, [the city] is immune from suit and; (2) even if the plaintiff was not engaged in criminal activity, if no officer acted with reckless disregard for her safety and well-being, then [the city] is immune from suit."[185]

As demonstrated in the foregoing sections, Plaintiff was engaged in a criminal activity at the time of the incident in question, namely disorderly conduct, resisting arrest, and simple assault on a police officer. Therefore Plaintiff is barred from asserting his state law claims against the City of West Point.

But even if Plaintiff had not been engaged in criminal activity, the City is still immune from suit because Birchfield and Spradling did not act with reckless disregard for Plaintiff's safety. While the statute does not provide a definition, the Mississippi Supreme Court describes recklessness as where an "actor has intentionally done an act of *unreasonable character in reckless disregard to the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow*."[186]

As demonstrated in the foregoing sections, Birchfield and Spradling employed the minimum amount of force necessary to effectuate the arrest. Birchfield arrived at Plaintiff's home believing Plaintiff to be the victim and attempted to assist him with his complaints.[187] Moreover, Plaintiff was not even booked into the jail but rather was taken straight to the hospital

---

[185] *Felter v. Brown*, 2014 U.S. Dist. LEXIS 1376, *10-11 (citing *Estate of James Stanley Williams v. City of Jackson, Mississippi*, 844 So. 2d 1161, 1164 (Miss. 2003)).

[186] *Maldanado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000) (emphasis in original) (quoting *Maye v. Pearl River County*, 758 So. 2d 391, 392 (Miss. 1999))..

[187] J. Birchfield Depo. at 55-56.

for evaluation immediately after the arrest.[188]  Plaintiff cannot show that the actions of Birchfield and Spradling were in reckless disregard of Plaintiff's safety and well-being.

Plaintiff is also barred from asserting his state law claims against the City because Birchfield and Spradling were performing a discretionary function at the time of the incident. Under Mississippi law, "a discretionary duty or function involves 'personal deliberation, decision and judgment."[189]  The courts have further held that an arrest without a warrant is a discretionary function.[190]  The MTCA bars suit against a government entity for discretion functions *even when there has been an abuse of discretion*.  As demonstrated above, Birchfield and Spradling had probable cause to arrest Plaintiff.  But even if they had abused their discretion, the City would still be immune from suit under the MTCA.

## CONCLUSION

For the foregoing reasons, Plaintiff has no cognizable claim against Defendants and Defendants are entitled to judgment as a matter of law.

Respectfully submitted this the 14th day of February, 2014.

CITY OF WEST POINT, MISSISSIPPI
JIMMY BIRCHFIELD
WILLIAM SPRADLING


BY:   */s/ Lem Montgomery*
LEM E. MONTGOMERY, III MB #100686
ORLANDO R. RICHMOND, SR. MB#9885
MARGARET Z. SMITH, MB# 104178
THEIR ATTORNEYS

---

[188]    *See* 911 Call Logs; G. Brooks Depo. at 113; J. Birchfield Depo. at 63-63.

[189]    *Freeman v. Jackson County Sheriff's Dep't*, 1998 Miss. App. LEXIS 645, *20 (quoting *Davis v. Little*, 362 So. 2d  642, 643 (Miss. 1978)).

[190]    *Id.* at *21.

31

OF COUNSEL:
BUTLER SNOW LLP
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(601) 948-5711
(601) 985-4500 (fax)
lem.montgomery@butlersnow.com
margaret.smith@butlersnow.com

## CERTIFICATE OF SERVICE

I, Lem E. Montgomery, III, one of the attorneys for City of West Point, Mississippi, Jimmy Birchfield, and William Spradling, do hereby certify that I have on this day caused to be served a true and correct copy of the above and foregoing instrument via hand delivery to the following:

>Brandon Flechas
>THE STROUD LAW FIRM
>5779 Getwell Road
>Building C, Suite 1
>Southaven, MS 38672
>Telephone: (662) 536-5656
>
>ATTORNEY FOR PLAINTIFF

**SO CERTIFIED,** this the 14th day of February, 2014.

>*/s/ Lem E. Montgomery, III*_____
>LEM E. MONTGOMERY, III