**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GREGORY BROOKS**                                                        **PLAINTIFF**

**vs.**                                                        **CAUSE NO.: 1:12-CV-190-SA-DAS**

**CITY OF WEST POINT, MISSISSIPPI;
JIMMY BIRCHFIELD; and
WILLIAM SPRADLING**                                                        **DEFENDANTS**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure

and L.U.Civ. R. 7(b)(4), and submits their Reply in Support of their Motion for Summary

Judgment in this cause as follows:

**I.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
PLAINTIFF'S CONCEDED CLAIMS**

In Plaintiff's Response to Defendant's Motion for Summary Judgment, he concedes the

following claims (1) Plaintiff's Fourteenth Amendment claims; (2) Plaintiff's official capacity

claims against West Point and Officers Birchfield and Spradling; and (3) Plaintiff's State law

claims.  Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

**II.      REPLY TO SECTION I(A) OF PLAINTIFF'S RESPONSE**

Plaintiff devotes the first seven pages of his Response Memorandum to the accusation

that Defendants have "slanted" the facts.  Defendants have taken no liberties with the record and

the material facts are not in dispute.  Plaintiff merely cites to the portions of his deposition

transcript where he attempted to explain away and minimize the descriptions he gave his social

worker about his prior PTSD symptoms and resulting episodes, many of which occurred in the

months preceding his arrest.[1]  However, this Court is entitled to look at *all evidence*, not just the

self-serving portions of Plaintiffs' deposition testimony, in determining summary judgment.[2]

It is undisputed that Plaintiff suffers from PTSD.[3]  His retained psychiatric expert

testified that "volatility of emotion, inability to control impulses, and lashing out over the small

things" are all characteristic of Plaintiff's PTSD,[4] and the record is replete with evidence that

Plaintiff loses self-control and lashes out during a PTSD episode.[5]   Although Plaintiff now

attempts to portray his prior PTSD events as accidents, jokes, or minor misunderstandings, the

circumstantial evidence strongly suggests otherwise.  Moreover, Plaintiff was specifically asked

in his deposition whether he has had issues with anger, agitation, depression, jumpiness,

nightmares, and anxiety, and he replied "yes" to all.[6]  Plaintiff's claim that Defendants have

"slanted" the facts is not true.

Plaintiff is also incorrect when he argues these facts "have nothing to do with"

Defendants' qualified immunity defense.[7]  They are directly relevant because it is undisputed

that Plaintiff was suffering from a PTSD episode on the incident date when he summoned the

police to his home.  Plaintiff's emergency room record confirms the episode started the night

---

[1] Plaintiff has described his previous PTSD episodes to his social worker at the VA Hospital.  Examples According to Plaintiff, his PTSD has led to (1) "yelling at [his children] for the little things,"[1] (2) an incident in which he "went off" on a coworker and a supervisor intervened, and (3) a peculiar domestic situation in which Plaintiff "tripped on a rug and fell on [his] wife" causing her to suffer a bruised lung, which compelled his family to move out due to distrust of Plaintiff.  [Excerpts from V.A. Hospital medical records, Def's Exh. X attached hereto.]  In treatment records generated in the months preceding the arrest incident, Plaintiff specifically notes that his "family does not trust him and his ability to manage his emotions at this time."  [Excerpts from V.A. Hospital medical records, Def's Exh. X attached hereto]  In the months preceding the arrest incident, Plaintiff's social worker recommended that he attend anger management for his PTSD symptoms, but Plaintiff declined.  [Excerpts from V.A. Hospital medical records, Def's Exh. X attached hereto.]
[2] Fed. R. Civ. P. 56.
[3] G. Brooks Depo. at 30-34, Def's Exh. M [Doc. #62 p. 3].
[4] Dr. Harold Ginzburg dep. at p. 94, Supp. Exhibit Y.
[5] *See supra* note 1.
[6] G. Brooks Depo. at 156, Def's Exh. "M" [Doc. #62 p. 24]..
[7] Plaintiff's Response Memorandum [Doc. No. 67] at p. 7.

before and stemmed from his sisters telephone harassment.[8] Plaintiff's own retained psychiatric expert, Dr. Harold Ginzburg, described Plaintiff's PTSD episode onset as "smoldering ambers" that started the night before and ultimately "went to flames" when Plaintiff encountered Officer Birchfield. Plaintiff concedes his sister's telephone harassment had caused him to become "upset" prior to the police encounter.[9]

These facts are all part of the "totality of the circumstances" surrounding the arrest and should be considered. The fact that Plaintiff was suffering from a PTSD episode at the time of his arrest and the manner in which Plaintiff's PTSD symptoms are medically manifested speaks to the situation Officer Birchfield encountered in Plaintiff's front yard. In short, Officer Birchfield encountered not just any person, but a person who (1) suffers from PTSD, (2) is medically predisposed to anger easily and lose emotional control during a PTSD episode, and (3) was suffering from a PTSD episode at the moment of the encounter. Because the Court is tasked to review the totality of the circumstances surrounding the arrest, these critical facts that set the stage for this arrest incident should not be ignored.

### III.    THE PROPER STANDARD OF REVIEW FOR QUALIFIED IMMUNITY

Plaintiff's Section II "Standard of Review" misstates the summary judgment standard of review for a qualified immunity defense.[11] Plaintiff leaves out the fact that "a defense of qualified immunity *alters the usual burden of proof in the context of summary judgment*" and mandates that *Plaintiff bear the burden* of proving that "no reasonable officer could have believed [the defendants'] actions were appropriate."[12] Plaintiff's Response also suggests the sole inquiry for qualified immunity is simply whether probable cause existed for the arrest, as if

---

[8] North Mississippi Medical Center Emergency Physician Record at 1, Def's Exh. P [Doc. #62-9].
[9] G. Brooks at 59-64, Def's Ex. M [Doc. #62 p. 7].
[11] *See* Plaintiff's Response Memorandum [Doc. No. 67] at p. 9.
[12] *Frederick v. Jones County Board of Supervisors*, No. 2:11-CV-02244-MTP, 2013, U.S. Dist. LEXIS 129668, *7-9 (S.D. Miss. Sept. 11, 2013).

the court were reviewing a motion for post-conviction relief. Rather, "the test for qualified immunity … involves, though it does not end with, the question of probable cause."[13] The test is whether the officers "***reasonably could have believed*** that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question ***beyond debate***."[14] The law generally disfavors expansive civil liability for actions taken while state officials are on duty because such liability can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.[15] In short, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[16] Thus, if under the totality of the circumstances the propriety of this arrest is even debatable, Defendants are entitled to qualified immunity and summary judgment is warranted.

## IV.    REPLY TO PLAINTIFF'S RESPONSE AS IT RELATES TO THE "RELEVANT FACTS"

Section I(B) of Plaintiff's Response Brief entitled, "Relevant Facts" should be re-titled, "A Few Facts Hand-Selected by Plaintiff."    Plaintiff's Response ignores most of the relevant facts entirely and devotes only one paragraph to the front yard encounter that formed the initial basis for the arrest. Plaintiff again engages in factual cherry picking and generalizing of facts on pages 7-12 wherein he maintains that the "entire interaction" in the front yard consisted of only three events: "(1) Plaintiff telling Officer Birchfield about his sisters' calls and messages; (2) Officer Birchfield telling Mr. Brooks that he could not press charges, and (3) Mr. Brooks telling Officer Birchfield to "get the hell out of [his] yard." This grossly understated summary of the front yard encounter can hardly be called "the totality of the circumstances." For the Court's

---

[13] *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. Tex. 2002).
[14] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. Tex. 2013) (citing *Morgan v. Swanson*, 659 F.3d 359, 370- 71 (5th Cir. 2011) (emphasis added))
[15] *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).
[16] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011).

clarification, what follows is a bulleted summary of the facts on which Plaintiff has no

evidentiary basis for dispute:

1. Plaintiff suffers from pre-existing PTSD.[17]

2. Plaintiff's emergency room medical record generated on the incident date confirms he was suffering from a PTSD episode on the incident date that began the night before.[18]

3. Plaintiff's retained psychiatric expert, Dr. Ginzburg, testified Plaintiff's PTSD symptoms had been "smoldering like ambers" since the previous evening and "went to flames" during the initial front yard encounter with Officer Birchfield.[19]

4. Plaintiff testified his sister's telephone harassment had caused him to become "upset" prior to the arrest.[20]

5. Plaintiff summoned the West Point Police to his home to investigate and assist with the telephone harassment charge.[21]

6. Officer Birchfield was dispatched to the scene to investigate the report.[22]

7. Officer Birchfield arrived at Plaintiff's home and they were speaking in close proximity.[23]

8. Baptist Memorial Health Center records indicate plaintiff's wife told his doctors that he "snapped" when he was "told [by Birchfield] that a complaint could not be filed."[24]

9. Plaintiff's retained psychiatric expert testified that both Mr. and Mrs. Brooks told him the situation "went from ambers to flames" when officer Birchfield "told him he couldn't press charges."[25]

10. Plaintiff admits he was in close proximity to Officer Birchfield during the front yard altercation, as he testified had just finished showing Officer Birchfield text messages on his cell phone when the altercation began.[26]

11. Plaintiff does not recall the entire encounter with Officer Birchfield. Plaintiff admits he told Officer Birchfield, "get the hell out of my yard,"[27] but testified, "I can't recall what

---

[17] G. Brooks at 30-34, Def's Exh. M [Doc. #62 p. 3].
[18] North Mississippi Medical Center Emergency Physician Records, Def's Exh. P [Doc. #62-3].
[19] Dr. Harold Ginzburg Depo at 131:10-134:16, attached hereto as Def's Exh. Y.
[20] G. Brooks at 59-64. Def's Exh. M [Doc. #62 p. 7].
[21] *Id.*
[22] Incident Details, Def's Exh. Q [Doc. #62-4].
[23] J. Birchfield at 27, Def's Exh. R [Doc. #62-5]; G. Brooks at 69, Def's Exh. M [Doc. #62 p. 9]
[24] Jackuline Birchfield at 43-45, Def's Exh. T [Doc. #62-7]
[25] Dr. Harold Ginzburg dep. at p. 131:10-134-16, Supp. Exhibit Y.
[26] G. Brooks at 69-71, Def's Exh. M [Doc. #62 p. 9].

else I said to him. I don't know if I said anything else to him or not. I was upset about when he told me that I couldn't press charges."[28]

12. Officer Birchfield <u>does</u> recall the encounter and testified throughout his deposition that Plaintiff was "hollering at the top of [his] lung[s]"[29] and remained "belligerent,"[30] "disorderly,"[31] "irate,"[32] and "angered"[33] after being told to "calm down."[34]

13. Birchfield testified he told Plaintiff to calm down but Plaintiff refused.[35] Plaintiff does not recall whether he was told to calm down and therefore cannot dispute Officer Birchfield's testimony.[36]

14. Officer Birchfield recalls telling Plaintiff he was under arrest for disorderly conduct.[37] Plaintiff cannot recall whether or not Officer Birchfield told him he was under arrest, but admits to turning away from Birchfield and going into his house.

15. Officer Birchfield then moved his car into what he called a defensive position in Plaintiff's driveway and specifically said he did this in order to "take cover for whatever [Plaintiff] came out of the house with that time" because "if you don't take cover at that point and use instinct, you don't know what's fixing to occur."[38]

16. Officer Birchfield then called Officer Spradling for backup.

17. As soon as Plaintiff entered his home he called 911 and shouted angrily to the 911 operator that Officer Birchfield had been "trying to court his wife."[39] Plaintiff later testified that this was an untrue statement that he made because he was "upset."[40]

18. When Officers Spradling and Birchfield knocked on the front door, Plaintiff did not merely "exit" his home, but "sprinted" from the house.[41]

19. Plaintiff testified he was in a state of shock and does not remember much of the arrest sequence.[42]

---

[27] G. Brooks at 69:14-24, Def's Ex. M [Doc. #62 p. 9].
[28] G. Brooks at 71:16-24 [Doc. #62 p. 10].
[29] J. Birchfield at 32:16-19, Def's Ex. R [Doc. #62-5].
[30] J. Birchfield at 45:10-15, Def's Ex. R [Doc. #62-5].
[31] J. Birchfield at 46:17-19; 48:14-18, Def's Ex. R [Doc. #62-5].
[32] J. Birchfield at 55:14-19, Def's Ex. R [Doc. #62-5].
[33] J. Birchfield at 34:23-25; 55:10-13, Def's Ex. R [Doc. #62-5].
[34] J. Birchfield at 50:8, Def's Ex. R [Doc. #62-5].
[35] *See supra* note 34.
[36] G. Brooks at 71:25-72:2, Def's Ex. M [Doc. #62 p. 10].
[37] J. Birchfield at 27:9-16, Def's Ex. R [Doc. #62-5].
[38] J. Birchfield at 27-28, Def's Ex. R [Doc. #62-5].
[39] J. Birchfield at 176-178, Def's Ex. R [Doc. #62-5].
[40] *Id.*
[41] G. Brooks at 80-81, Def's Exh. M [Doc. #62- p. 12]; J. Birchfield at 48, 53, Def. Exh. R [Doc. #62-5]; Spradling at 16-17, Def's Exh. U [Doc. #62-8].
[42] G. Brooks at 82-83, Def's Exh. M [Doc. #62 p. 13].

20. Plaintiff testified he perceived Officers Birchfield and Spradling to be "Iraqi enemy combatants."[43] He no longer understood that they were law enforcement officers or that he was being detained and arrested.[44]

21. Plaintiff's wife testified that Plaintiff had "snapped."[45]

22. When Plaintiff sprinted from his house, Spradling and Birchfield perceived him to be "an enraged state" and believed he was "charging" and "lunging" toward the Officers.[46]

23. Plaintiff admitted he snatched his hand away from Officer Spradling during the arrest sequence and extended both hands toward Officer Birchfield which contacted Birchfield's chest causing Birchfield to "stumble."[47]

24. Plaintiff testified he stood hard against the officers as they tried to lower him to the ground, and boasted they "couldn't ever get me down."[48]

25. The Officers did not take Plaintiff to jail, but instead took him directly to the hospital after the incident.

26. Plaintiff was treated for PTSD and had to be sedated because according to the ER staff he was "combative and flailing [his] arms and legs."[49]

Throughout his deposition, Officer Birchfield described Plaintiff as "belligerent," "disorderly," "irate" and "angered." Plaintiff does not remember these facts, and therefore cannot dispute them, which means the Court must accept them as true in determining the Defendants' Motion for Summary Judgment. The Court must therefore decide, given the totality of the circumstances discussed above, whether Plaintiff's conduct and demeanor while in close proximity to Officer Birchfield constituted a reasonable threat of imminent breach of the peace.

Plaintiff correctly explains that he was arrested under the Mississippi Disorderly Conduct Statute, Miss. Code Ann. §97-35-7. To be *convicted* under that statute, there must be "sufficient evidence to believe that a breach of the peace was being threatened or that a crime was about to

---

[43] G. Brooks at 88-89, Def's Exh. M [Doc. #62 p. 14].
[44] G. Brooks at 81:15-81:25, 82:15-82:18, 82:21-82:24, 83:19-83:24, Def's Exh. M [Doc. #62 pp. 12-13].
[45] *See supra* note 8.
[46] J. Birchfield at 48-54, Def's Exh. R [Doc. #62-5].
[47] G. Brooks at 90, 94-95, Def's Exh. M [Doc. #62 pp. 15-16].
[48] G. Brooks at 96:5-10, Def's Exh. M [Doc. #62 p. 16].
[49] North Mississippi Medical Center records, Def's Exh. V [Doc. #62-9].

be committed."[50]  Under this statute, a plaintiff's "language and … physical acts must be examined to determine whether [plaintiff] had an intent to breach the peace or whether he did in fact breach the peace."[51]  However, the analysis does not stop there when analyzing qualified immunity.  "The test for qualified immunity … involves, though it does not end with, the question of probable cause."[52]  The proper test is whether any "reasonable police officer could have believed that probable cause existed for the law enforcement actions."[53]  If so, summary judgment is appropriate in favor of the officers.  To defeat qualified immunity, "'[a] plaintiff must allege conduct which 'shocks the conscience.'"[54]

With the exception of *Haynes v. Ramirez et al.,*[55] an unpublished decision that is easily distinguishable from the instant case,[56] <u>none</u> of the cases relied on by Plaintiff address qualified immunity.  The cases cited by Plaintiff address the existence of probable cause for purposes of post-conviction relief, not whether "<u>a reasonable officer could have believed that</u> probable cause existed for the law enforcement actions,"[57] which is the standard before this Court.

Plaintiff first relies upon *Jones v. State*, a case in which "the Mississippi Supreme Court overturned a conviction under the disorderly conduct statute, finding there to be insufficient probable cause."[58]  The *Jones* plurality opinion *never even mentions the disorderly conduct*

---

[50] *Odem v. State,* 881 So.2d 940, 946 (Miss. Ct. App. 2004).
[51] *Id.*
[52] *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. Tex. 2002).
[53] *Id.*
[54] *Bolton v. City of Gulfport.* 2012 U.S. Dist. LEXIS 173818, *36 (quoting *Murray v. Earle*, No. 06-50568, 2008 U.S. App. LEXIS 7809 WL 1744257, *5 (5th Cir. 2008)).
[55] *Haynes v. Ramirez, et al.*, is an unpublished opinion and therefore non-binding.  *See Bradford v. Tamez (In re Bradford)*, 660 F.3d 226, 229 fn. 1 (5th Cir.2011) (Unpublished opinions "are not binding precedent.") (citing *Arnold v. Thaler*, 630 F.3d 367, 371 n. 2 (citing 5th Cir. R. 47.5.4)).
[56] In *Haynes*, the police officer stormed the porch of a heckler during an arrest, repeatedly escalated and re-escalated the situation intentionally and ultimately manhandled, maced, and arrested the man for cursing.
[57] *Keenan v. Tejeda*, 290 F.3d 252, 263 (5th Cir. Tex. 2002); *see also Payne v. Dickerson*, No. 3:07CV3-WAP-JAD, 2008 U.S. Dist. LEXIS 119502, *16-17 (N.D. Miss. March 26, 2008) (If "reasonable officers could debate whether or not probable cause existed under all the facts, then [defendant] would be entitled to qualified immunity and summary judgment.").
[58] *See* Pl's Response at 13.

8

*statute*. Instead, the *Jones* court addressed whether the trial court erred by denying defendant's motion to suppress evidence of his initial arrest, which defendant contended was unlawful.[59] There is no indication that Jones's initial arrest was made pursuant to Mississippi's disorderly conduct statute; nor did the court determine whether probable cause existed according to the disorderly conduct statute.[60] In fact, the only mention of the disorderly conduct statute is in the dissent by Justice Easley in which he finds that the arrest was lawful pursuant to the disorderly conduct statute.[61] Accordingly, *Jones* is inapposite to the present case.

Plaintiff cites, but attempts to distinguish, *Odem v. State*, a case in which the Mississippi Court of Appeals found that the arresting officer **did** have probable cause to arrest defendant for disorderly conduct.[62] However, the *Odem* case offers strong support for Defendants' summary judgment motion. In *Odem*, the accused was found guilty of disorderly conduct under circumstances similar to the present case.

In *Odem*, defendant initiated contact with the police by going to the police station to retrieve his car that had been impounded.[63] The officer explained to Odem the process for retrieving his car.[64] Upon hearing the procedure for retrieval of his vehicle, "Odem became agitated."[65] The officer testified that Odem began cursing and the officer warned him that "the next time that you utter cuss words like you're doing now, I'm going to place you under arrest

---

[59] *Jones v. State*, 798 So. 2d 1241, at 1247.

[60] *Id.* at 1247-1248.

[61] *Id.* (dissent, J. Easley). The disorderly conduct statute is mentioned in the dissent in which Justice Easley found that "there was not an unlawful arrest because Jones's crime of disorderly conduct or profanity in a public place was committed prior to his arrest."

[62] Plaintiff's Response at 14-16. Again, this is not the proper standard to be applied by this Court. In order to defeat qualified immunity, Plaintiff must show that <u>no reasonable officer could have believed</u> probable cause existed. *Fredrick v. Jones County Board of Supervisors*, No. 2:11-CV-002244-MTP, 2013 U.S. Dist. LEXIS 129668, *7-9 (S.D. Miss. Sept. 11, 2013).

[63] 881 So. 2d 940, 942.

[64] *Id.* at 942-943.

[65] *Id.*

for disorderly conduct."[66]  On review of Odem's motion for post-conviction relief, the

Mississippi Court of Appeals held probable cause existed to arrest Odem for disorderly conduct,

or breach of the peace, and that the arrest was lawful.[67]  The *Odem* Court distinguished prior

cases (including *Jones*) which involved arrests based on profanity and noted that in *Odem* "there

was testimony that the basis for the arrest was not solely based on his spoken words but also

included consideration of his conduct, behavior and demeanor."[68]

In a more recent case, *Sendelweck v. State*, 101 So.3d 734 (Miss. Ct. App. 2012),

Sendelweck became upset when he learned that a City of Brandon Police officer had admonished

his family to keep their dogs fenced.[69]  Sendelweck called the police department and demanded

to speak with the officer who issued the warning.[70]  The city sent another officer, Sgt. Parfait, to

meet with Mr. Sendelweck who was at his mother's house.[71]  When Sgt. Parfait arrived, Mr.

Sendelweck was irate and pointed his finger in the officer's face and asked him if "he was the

dog catcher."[72]  Sendelweck gritted his teeth and told Officer Parfait to "get the f***ing dog

catcher over there now."[73]  The officer asked Sendelweck to "step back," "calm down," and to

quit cussing and threatening him or he would arrest him for disorderly conduct.[74]  Sendelweck

allegedly responded that he "wasn't going f***ing nowhere with the officer."[75]  Sgt. Parfait told

Sendelweck he was under arrest and attempted to grab his wrist.[76]  When Sendelweck pulled his

hand away, Sgt. Parfait sprayed him with pepper spray, handcuffed him, and arrested him for

---

[66] *Id.* at 943.  According to the officer, Odem responded that "this is just a bunch of sick shit that I should
not have to go though, and I'm tired of it.  And it seems like all you MF's are harassing us."  Odem denied
cursing at the officer.  *Id.* at 944.
[67] *Id* at 947.
[68] *Id.* at 946.
[69] *Id.* at 735.
[70] *Id.*
[71] *Id.*
[72] *Id.* at 736.
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*

disorderly conduct and resisting arrest.[77]  On review of his conviction, the Court of Appeals found that even though the arrest affidavit was ultimately dismissed because it merely alleged Mr. Sendelweck was cursing, the arrest was lawful because the record reflected that Sgt. Parfait based the arrest on Sendelweck's threatening conduct and offensive language, not his language alone.[78]

The present case is analogous to *Odem*[79] and *Sendelweck*.  As in *Odem* and *Sendelweck*, Plaintiff initiated contact with the police department and summoned Officer Birchfield to his home.[80]  As in *Odem* and *Sendelweck*, Plaintiff became irate and began cursing loudly and angrily in close proximity to the Officer.[81]  As in *Odem* and *Sendelweck*, Birchfield warned Plaintiff to "calm down" and to stop cursing at the police "*in that manner*" or he would be arrested for disorderly conduct.[82]  As in *Odem* and *Sendelweck*, Plaintiff ignored Birchfield's verbal request and continued cursing at Birchfield in a loud, belligerent, and threatening state.[83]  As in *Odem* and *Sendelweck*, Birchfield then arrested Plaintiff for disorderly conduct, not merely because he was cursing, but for his demeanor and conduct that was only further evidenced by his cursing.[84]  Plaintiff's insistence that Birchfield arrested him for cursing alone ignores

---

[77] *Id*.

[78] *Id*. at 741.

[79] Plaintiff attempts to distinguish *Odem* by arguing that, unlike the officer in *Odem* who was inside the sheriff's office, Birchfield could have retreated from the situation.  This ignores the policy and procedure of law enforcement.  Plaintiff summoned Birchfield to his home to investigate a crime.  Once Officer Birchfield arrived it was his right and duty to stay on the property until his investigation was complete.  The investigation was initially of Plaintiff's sister, but it ultimately shifted to an investigation of Plaintiff when he became disorderly.  While it is possible officer Birchfield could have turned his back on Mr. Brooks, he had every right to ask Mr. Brooks to calm down.

[80] G. Brooks at 59-64; 911 Call Logs at DEF-0215 [Doc #62 pp. 61-62, pp. 62-64].

[81] G. Brooks at 69, 71-72, 75 [Doc #62 pp. 9-11]; J. Birchfield at [Doc #62-5].

[82] West Point Police Department Incident Report No. 201201009 at DEF-002 [Doc #62-6].; J. Birchfield at 29, 50-51, 55-56 [Doc #62-5]. *Cf*. G. Brooks dep. at 71-72, 74 (testifying he does not recall whether or not Officer Birchfield told him to calm down) [Doc #62 p. 10]..

[83] *Id*.

[84] J. Birchfield Depo. at 55-56, Def's Ex. R [Doc. #62-5].

Birchfield's testimony that the "**cursing is just showing his anger of disorderly.**"[85]  Birchfield

further explained:

> **My anger was never there.  I'm just following, you know,
> police information or what you're supposed to give to the
> people when they asking for information.  But when they get
> very irate and disorderly and you explain to them that can
> cause them to go to jail for being disorderly, once you explain
> that and they continually do it, then they fall up under
> disorderly.  That's the reason why he was taken into custody
> because he was explained.  I explained it to him and told him,
> these things can cause you to be arrested for disorderly.  . . .
> All those words is just based on his anger . . ."[86]**

On page sixty-two of his deposition, Officer Birchfield again clarified that the arrest was

prompted by Plaintiff's actions rather than his words:

> Q.     But you had already made your decision to arrest him and that's
>         why - -
>
> A.     **From his *actions* before, yes, sir.  From his *actions* before.**
>
> Q.     Because of the remarks he made to you?
>
> A.     **From his actions.**
>
>                        ***
>
> A.     He was being arrested for cursing, saying, "get your mother
>        fucking ass off my yard.  I told your punk ass."  those words is
>        when he was told he couldn't be cursing at the police department –
>        the police officer **in that type of manner.**[87]

Although Plaintiff's counsel made endless attempts to extract sound bites from Officer Birchfield

suggesting Plaintiff's cursing was the sole basis for the arrest, Officer Birchfield has always

---

[85] Birchfield Depo. at 55, Def's Exh. R [Doc. 62-5].
[86] Birchfield Depo. at 55-56, Def's Exh. R [Doc. 62-5].
[87] *Id.*

qualified that it was not Plaintiff's curse words but "the type of manner"[88] in which Plaintiff was acting that led to the arrest decision.

As in *Odem* and *Sendelweck*, there was sufficient evidence for Birchfield to believe he had probable cause to arrest Plaintiff. Plaintiff's instantaneous and irate behavioral change in response to Birchfield's advice about telephone harassment charges, coupled with his refusal to calm down while in close proximity to Birchfield gave Birchfield a reasonable belief that Plaintiff was disorderly.[89] Plaintiff was arrested for his irate and belligerent conduct and demeanor. As Officer Birchfield pointed out above, his curse words were merely one symptom of his overall disorderly conduct. Accordingly, Birchfield and Spradling are both entitled to qualified immunity and summary judgment is appropriate.

In addition, while it is clear Officer Birchfield had probable cause to arrest Plaintiff for disorderly conduct under *Odem* and *Sendelweck*, that is not the relevant inquiry. The proper inquiry is whether Officer Birchfield's decision to arrest was unreasonable "beyond debate."[90] If reasonable minds could differ, summary judgment is appropriate. If nothing else, in light of *Odem* and *Sendelweck* the Court must agree the propriety of the arrest is not objectively beyond debate. The Chief of the Jackson Mississippi Police Department has issued an expert report opining the arrest was reasonable and proper.[91] The test is whether any "reasonable police officer could have believed that probable cause existed for the law enforcement actions."[92] If so,

---

[88] J. Birchfield at 62 Def's Exh. R [Doc #62-5].
[89] Plaintiff also takes issue with the fact that Birchfield could have left but chose to stay. Birchfield made clear that he had decided to arrest Plaintiff for disorderly conduct before returning to his car to call for backup. It is irrelevant whether Birchfield technically could have left at this point as the decision to arrest Plaintiff had already been made.
[90] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. Tex. 2013) (citing *Morgan v. Swanson*, 659 F.3d 359, 370-71 (5th Cir. 2011).
[91] Expert Report of Chief Lindsey Horton, Def's Exh. W [Doc #62-10].
[92] *Id.*

13

summary judgment is appropriate in favor of the officers. Here, the Defendants arrest certainly meets the applicable threshold for qualified immunity.

Alternatively, assuming it had been unclear whether Mr. Brooks was disorderly in the initial front yard encounter with Birchfield, the Court must certainly agree that Officers Birchfield and Spradling had reason to expect an imminent breach of the peace when Mr. Brooks bolted from the side door of his house toward the officers under the belief that they were Iraqi enemy combatants. Even Mr. Brooks's wife concedes Brooks had "snapped" at that point. If any fact issues existed as to Mr. Brooks's conduct in the initial encounter (which is adamantly denied), the second encounter when he bolted from the side door certainly meets the standard for disorderly conduct. Thus, the arrest for disorderly conduct was lawful because it was not only supported by Mr. Brooks's behavior in the first encounter with the officers, but the second encounter as well.

In conclusion, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, so [a court should not] deny immunity unless existing precedent [places] the statutory or constitutional question *beyond debate*."[93] Because Plaintiff has failed to show that Birchfield and Spradling acted unreasonably under the circumstances, summary judgment is appropriate.

## V. OFFICERS BIRCHFIELD AND SPRADLING'S ARREST OF PLAINTIFF FOR RESISTING ARREST WAS REASONABLE

Plaintiff admits that he resisted the arrest by Officers Birchfield and Spradling. *See* Pls.' Br. [Doc. 67] at 20 (admitting Plaintiff pulled away from the officers and put his hands up to stop Officer Burchfield during the arrest sequence). Despite this admission, Plaintiff argues the arrest on a charge of resisting arrest was unreasonable. Specifically, he contends he had a "right" to

---

[93] *Russell v. City of Magee*, No. 3:11-CV-637-CWR-LRA, 2013 U.S. Dist. LEXIS 42343, *8 (S.D. miss. March 26, 2013) (emphasis in original) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

use reasonable force against the Officers because the arrest was (allegedly) unlawful. This argument fails for several reasons.

First, as discussed above, Officers Birchfield and Spradling's arrest of Plaintiff was lawful. Because Officer Birchfield (and later Officer Spradling) had probable cause to arrest Plaintiff for violation of the disorderly conduct statute, the arrest was lawful. Accordingly, to the extent that a person "has a right to use reasonable force to resist an unlawful arrest," such "right" does not apply here.[94] The arrest was lawful, and the law required for Plaintiff to acquiesce to the arrest.[95] Plaintiff's admitted failure to do so constitutes resisting arrest.

Second, Plaintiff's statement of the law is incomplete. The act of an unlawful arrest alone does not create a "right" to resist. One of two additional factors must be satisfied before the "right" to arrest is triggered. The "right" to use reasonable force to resist arrest is "limited to those situations where the arrest is in fact illegal and [a] the arrestor and arrestee have reason to know that it is or [b] where the arrest is accompanied by excessive force."[96] The undisputed evidence in this case reveals that neither of these two additional factors has been met.

By his own admission, Plaintiff did not know that the arrest was unlawful at the time the arrest was being made. Plaintiff has repeatedly testified that he did not understand what was going on at the time of his arrest.

> Q. Okay. And why did you run outside out of the side door?
>
> A. I mean, I was scared. I just don't know. I mean, I was – I didn't know what was going on.
>
> Q. Okay. So let me get this straight. You didn't answer the door, you ran out the side door and you ran into Officer Spradling?

---

[94] *See Murrell v. State*, 655 So. 2d 881, 888 (Miss. 1995).
[95] "It is unlawful for any person to resist or obstruct by violence, force or in any other manner his lawful arrest." *Davis v. State*, 933 So. 2d 304 (Miss. Ct. App. 2005) (citing Mississippi Code Annotated § 97-9-73 (Rev. 2000)).
[96] *Murrell v. State*, 655 So. 2d 881, 888 (Miss. 1995).

15

A. Yes.

Q. Did you think Iraqis were present? You have said that several times.

A. Yes.

. . .

Q. All right. So when you came around the corner of the garage, were you surprised to see Spradling standing there?

A. Yes.

. . .

Q. Did you under -- did you know who he was?

A. I -- I was shocked to see him. You know, I didn't know what was going on. At the time I was just in a state of shock.

. . .

Q. Okay. You understood when you saw Officer Spradling that he was a uniform officer of the West Point Police Department on duty, right?

A. Like I said, I can't remember, you know. I was in a state of shock at that time. I didn't know what was going on.

G. Brooks Depo. at 81:15-81:25, 82:15-82:18, 82:21-82:24, 83:19-83:24, Def's Exh. M [Doc. #62 pp. 12-13].

Q. Okay. All right. Now, tell me again about your thoughts that Iraqis were everywhere.

A. I mean, like I said, I was in a state of shock. And when I went outside, I felt like Iraqis was everywhere when I heard that bang.

Q. Okay. I want to understand what was going through your mind. Were you in a panic at that point?

A. Could have been. I mean, I was having several -- I mean, it was -- I was in a state of shock. I mean, it traumatized me. Right now, when I think about it, it's a blur.

16

> Q. Okay. I was going to ask you that, too. When you say Iraqis were everywhere, you mean like enemy combatants?
>
> A. Uh, I guess we are thinking about the same thing. I guess that would be, you know, enemy combatants because Iraqis were our enemies.
>
> Q. Okay. So that's what you were thinking when you ran outside?
>
> A. Yes.
>
> Q. Where were you running to?
>
> A. I was running. I mean, I didn't know what was going on. I was trying to keep my family safe. I didn't know what was the deal. I don't know.

*Id.* at 88:13-89:13, Def's Exh. M [Doc. #62 p. 14]. Accordingly, the undisputed evidence reveals that the "arrestee" did not know that the arrest was (allegedly) unlawful at the time of the arrest. *See Murrell*, 655 So. 2d at 888. Thus, the "right" to use reasonable force to resist the arrest does not attach. Plaintiff lacked the requisite "knowledge" of (alleged) unlawfulness at the time he resisted arrest.

Similarly, there was no use of excessive force during the arrest. As discussed in more detail below, the force employed by the Officers to restrain Plaintiff was objectively reasonable. Moreover, the only evidence regarding the reasonableness of the force applied by the officers comes from the expert report of Defendants' expert, Chief Lindsey Horton. Thus, the level of force applied by the Officers in restraining Plaintiff does not constitute a basis for resisting the (allegedly) unlawful arrest.

## VI. OFFICER BIRCHFIELD AND OFFICER SPRADLING'S ARREST OF PLAINTIFF FOR ASSAULT ON A POLICE OFFICER WAS REASONABLE

Plaintiff's argument regarding the alleged unreasonableness of his arrest for assault on a police officer is nearly identical to his argument regarding the alleged unreasonableness of his arrest for resisting arrest. Plaintiff contends that the arrest was unlawful, and, therefore, he was

justified in using force against the Officers.  As with the resisting arrest, there is no fact dispute –
Plaintiff assaulted Officer Birchfield.  Plaintiff admits he hit Officer Birchfield ("I pulled my
hand away from Spald – Spradling and it hit Birchfield in the chest.").[97]  Plaintiff argues his
assault on Officer Birchfield should be excused because the arrest was unlawful.

Again, Plaintiff's argument is fundamentally flawed because, as discussed above, the
Officers had probable cause to arrest Plaintiff and, thus, the arrest was lawful.  Moreover, it is
undisputed both that Plaintiff did not know he was being (allegedly) unlawfully arrested and that
the Officers did not use excessive force.  Accordingly, the "right" to resist the arrest and
concomitantly to assault Officer Birchfield was not triggered, and the arrest for assault was
entirely reasonable.

### VII.   PLAINTIFF'S FIRST AMENDMENT CLAIM CANNOT SURVIVE ABSENT HIS FOURTH AMENDMENT CLAIM

Plaintiff incorrectly states that if even there was probable cause for the arrest, "Mr.
Brooks' First Amendment claim may continue."[98] The Supreme Court "has never recognized a
First Amendment right to be free from a retaliatory arrest that is supported by probable cause."
*Reichle v. Howards*, 132 S. Ct. 2088, 2093-2094 (2012); *see also Ashcraft v. City of Vicksburg*,
2013 U.S. Dist. LEXIS 88206, *18-19 (S.D. Miss. June 24, 2013) (finding defendant was
entitled to qualified immunity on First Amendment claim because probable cause existed *or a
reasonable police officer could believe probable cause existed*.).  The law is clear that an officer
is entitled to qualified immunity on a First Amendment claim if the arrest was supported by
probable cause.

---

[97] *See supra* note 46.
[98] Pl's Response at 19.

## VIII.  EXCESSIVE FORCE

Defendants will not rehash the points in their original Memorandum addressing Plaintiff's claim of excessive force.  However, Plaintiff's Response incorrectly argues that "there is a pure fact dispute regarding the use of force."[99]  Because Officers Birchfield and Spradling have asserted qualified immunity, "whether the force used was objectively reasonable is a question of law for the Court to resolve."[100]  The Court should review the testimony and decide whether the officers' attempts to subdue Brooks were objectively reasonable given the totality of the circumstances.

The review should be an easy one since Brooks has admitted in his deposition and now in his Response Memorandum that he was actively and purposely resisting arrest when the officers attempted to handcuff him.  The record is clear that after hearing the knock on the door, Plaintiff ran from the house believing Iraqi enemy combatants were everywhere.  He then recalls Officer Spradling grabbing him and putting his hands behind his back. Plaintiff admitted that the officers attempted to put him on the ground but that "they couldn't ever get me down."[101]  Plaintiff testified that his wife and daughter kept saying "[j]ust lay down" and that the officers eventually forced him down to the ground, handcuffed him, and put him in the patrol car without further incident.

Plaintiff attempts to focus the Court's attention on the fact that he was allegedly "pulled, pushed and tossed back and forth and hit against the garage door."  Defendants do not dispute that they struggled to restrain the Plaintiff.  Such force, however, is clearly not unreasonable given Plaintiff's resistance. Plaintiff now also attempts to argue the officers never told him to put

---

[99] Plaintiff's Response [Doc. No. 67] at p. 21.
[100] *Russell v. City of Magee*, 2013 U.S. Dist. LEXIS 42343, *16 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187-88 (5th Cir. 2011)); *see also Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citing *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)).
[101] *See supra* note 47.

his hands behind his back or lay down, but this is at a minimum inconsistent with his deposition testimony that he couldn't recall whether Officer Birchfield gave an arrest order during the initial encounter.[102]

In any event, Plaintiff's admissions that the officers "couldn't ever get him down" and his pleas by his wife and daughter to "just lay down" prove that Plaintiff knew the officers were attempting to restrain him and place him on the ground; nevertheless, Plaintiff resisted. Chief Horton, the only expert designated in the area of police procedures, has given an undisputed opinion that the arrest procedures employed by Officers Spradling and Birchfield were "textbook."[103]  "[R]easonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene and must account for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation.[104]  Plaintiff has failed to show that Birchfield and Spradling acted unreasonably under the circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiff has no cognizable claim against Defendants and Defendants are entitled to qualified immunity and to judgment as a matter of law.

Respectfully submitted this the 28th day of March, 2014.

                    CITY OF WEST POINT, MISSISSIPPI
                    JIMMY BIRCHFIELD
                    WILLIAM SPRADLING

            BY:   _/s/ Lem Montgomery_
                    LEM E. MONTGOMERY, III MB #100686
                    MARGARET Z. SMITH, MB# 104178

                    THEIR ATTORNEYS

---

[102] G. Brooks at 99, Def's Exh. M. [Doc. #62 p. 17].
[103] Expert Report of Chief Lindsey Horton, Def's Exh. W [Doc. #62-10]
[104] _Hancock v. City of Greenwood_, 942 F. Supp. 2d 624, 627-628 (N.D. Miss. 2013).

OF COUNSEL:

BUTLER SNOW LLP
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(601) 948-5711
(601) 985-4500 (fax)
lem.montgomery@butlersnow.com
margaret.smith@butlersnow.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Lem E. Montgomery, III, one of the attorneys for City of West Point, Mississippi, Jimmy Birchfield, and William Spradling, do hereby certify that I have on this day caused to be served a true and correct copy of the above and foregoing instrument via hand delivery to the following:

      Brandon Flechas
      THE STROUD LAW FIRM
      5779 Getwell Road
      Building C, Suite 1
      Southaven, MS 38672
      Telephone: (662) 536-5656

      ATTORNEY FOR PLAINTIFF

**SO CERTIFIED,** this the 28th day of March, 2014.

                      */s/ Lem E. Montgomery, III*
                      LEM E. MONTGOMERY, III

ButlerSnow 20521084v1