IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GREGORY BROOKS                                                                PLAINTIFF

V.                                                     CAUSE NO.: 1:12CV190-SA-DAS

CITY OF WEST POINT, MISSISSIPPI; and
JIMMY BIRCHFIELD; and
WILLIAM SPRADLING                                             DEFENDANTS

MEMORANDUM OPINION

Plaintiff filed this cause of action alleging violations of his First, Fourth, and Fourteenth Amendment rights. Defendants filed a Motion for Summary Judgment [57] asserting the individual officers were entitled to qualified immunity. The briefing is complete, and the Court finds as follows:

*Factual and Procedural Background*

Plaintiff Gregory Brooks called the West Point Police Department on the morning of January 2, 2012, to inquire about making a complaint and pressing charges against his sister for telephone harassment. Officer Jimmy Birchfield was dispatched to Brooks' home to address the complaint. Birchfield joined Brooks on his driveway where Brooks filled Birchfield in on the telephone calls, showed him offending text messages, and played him voice mail recordings. According to the Plaintiff, Birchfield responded to Brooks' complaint by informing him that because Brooks had made calls to the sister, he could not press charges for telephone harassment.[1]

---

[1] Birchfield contends that instead of telling Brooks he could not press charges, he explained that it was unlikely his sister in Atlanta would be extradited to West Point on misdemeanor charges.

Plaintiff contends that he was "displeased with Birchfield's response and told Birchfield to leave his property." Brooks contends he was never told that he had broken any law or that he was under arrest. Birchfield's recollection however, is as follows:

> [Brooks] said, "well Birchfield," you know, "I don't like your punk ass no way." I said, "Mr. Brooks, I'm trying to explain to you this is the way it works." And he said, "you know, furthermore, just get your mother f*cking ass out of my yard." So that's when I told Mr. Brooks, I said, "Mr. Brooks, this is the only thing about this." I said, "now, you can't be cussing the police." I said, "now, at this point what you're doing is being disorderly." I said, "I'm trying to advise you on what we can do and what we can't do." And he said, "I don't like your mother f*cking ass no way. Get the f*ck out of my yard." I said, "okay, Mr. Brooks, you're fixing to go to jail for disorderly conduct."

Brooks returned inside his house, and Birchfield reversed his police cruiser down the driveway and parked on the street in front of the Brooks' house. Birchfield radioed in to 911, reported that Brooks was "clearly disorderly," and requested another unit be dispatched.

Sergeant William Spradling arrived approximately five minutes later. Both officers approached Brooks' home, and Birchfield knocked on the front door. Brooks, an Army veteran who served in Iraq, suffers from Post-Traumatic Stress Disorder (PTSD). Brooks contends he was propelled into a PTSD episode by Birchfield's loud banging on his front door. After the knock at the door, Brooks testified that he was "foggy" and did not remember much after that point. Brooks exited the house from a side door asking why the officers were banging on the door. Spradling grabbed Brooks' arm and attempted to place it behind his back. Brooks claims Birchfield then "rushed" toward him, and in response, Brooks pulled his hand away from Spradling putting both hands out in front of himself and Birchfield collided with his hands. Brooks was arrested and charged with disorderly conduct, resisting arrest, and simple assault on a police officer. Brooks was transported to the Clay County Jail, and taken to the Clay County Medical Center for complaints of neck and back pain.

Plaintiff filed a complaint against the City of West Point and both officers in their individual and official capacities. Plaintiff alleges his constitutional rights pursuant to the First, Fourteenth, and Fourth Amendments were violated, as well as state law claims for false arrest and imprisonment, assault and battery, and intentional infliction of emotional distress. After Defendants filed their Motion for Summary Judgment, Plaintiff conceded all claims against the City of West Point and the officers in their official capacities, Plaintiff's state law claims, and Plaintiff's Fourteenth Amendment claims. Accordingly, the only inquiry left in this case is whether Officer Jimmy Birchfield and Sergeant William Spradling are entitled to qualified immunity for the alleged violations of Plaintiff's First and Fourth Amendment rights.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but

only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense. See Gates v. Tex. Dep't of Protective and Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008). Once a defendant asserts a good faith qualified immunity defense, the burden shifts to the plaintiff to show that the defense is inapplicable. Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007). "Negating qualified immunity 'demands more than bald allegations and conclusionary statements.'" Fleming v. Tunica County, 497 F. App'x 381, 388 (5th Cir. 2012) (quoting Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 995 (5th Cir. 1995)). Plaintiff "must allege facts specifically focusing on the conduct of [the individual defendant] which caused his injury." Id. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012). In the summary-judgment posture, the Court "'looks to the evidence before it (in the light most favorable to the plaintiff.)'" McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has

adduced facts sufficient to establish a constitutional or statutory violation." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (alteration in original) (quoting Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." Thompson v. Upshur Cnty., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Indeed, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." Id. (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the Court. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). Thus, the qualified immunity determination should be made before trial as a matter of law unless material disputed facts exist as to whether the official acted in a reasonable manner. Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993); Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011); Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ("Immunity ordinarily should be decided by the court long before trial").

*Discussion and Analysis*

*Fourth Amendment*

Plaintiff asserts that his arrest, "which lacked probable cause, was the result of retaliatory animus on the part of Birchfield for Plaintiff's exercise of his right to free speech under the First Amendment." The Fourth Amendment to the United States Constitution provides that citizens

5

have the right to be free from arrest without probable cause. Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). In order to prevail on his claim of false arrest Brooks must prove that he was arrested without probable cause. Brown v. Lyford, 243 F.3d. 185 (5th Cir. 2001); Haggerty v. Texas So. Univ., 391 F.3d 653 (5th Cir. 2004). The Fifth Circuit has held that "the validity of an arrest does not necessarily turn on the knowledge of the arresting officer at the moment the decision to arrest is made. The critical time is the moment of arrest, not the moment the officer makes the decision to arrest." United States v. Tinkle, 655 F.2d 617, 623 (5th Cir. 1981). See also Brendlin v. California, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) ("there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."). Therefore, the Court looks to the time of arrest to determine if the officers had probable cause to arrest Brooks. Id. ("we find no substance to the contention that an arrest is invalid if it is not supported by probable cause at the time the decision to arrest is made").

In order to overcome the defense of qualified immunity asserted by the defendants, Brooks must prove that all law enforcement officers, except "the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986), would recognize that probable cause for his arrest did not exist. "[T]here must not even 'arguably' be probable cause for the . . . arrest for immunity to be lost." Brown, 243 F.3d at 190. If reasonable officers could debate whether probable cause existed under all the facts, then the officers would be entitled to qualified immunity and summary judgment. Whether an arresting officer had probable cause depends on whether, at the time of the arrest, the facts and circumstances within the officer's knowledge would support a reasonable person's belief that the

arrested individual had committed or was committing an offense. Michigan v.DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

Plaintiff was arrested for disorderly conduct, which is to "fail[] or refuse[] to promptly comply with or obey a request, command, or order of a law enforcement officer" pursuant to Mississippi Code Section 97-35-7, simple assault on a police officer under Mississippi Code Section 97-3-7, and resisting arrest pursuant to Mississippi Code Section 97-9-73. Viewing the facts in the light most favorable to the Plaintiff, the Court must determine whether Officer Birchfield had probable cause to arrest Plaintiff for those alleged violations.

Brooks acknowledges that on the morning of January 2, 2012, when told by Birchfield he could not press charges on his sister, that he became "upset," and said "get the hell out of my yard." He was unclear what else he might have said to Birchfield and does not recall Birchfield telling him to calm down. Birchfield testified that he and Brooks were talking in close proximity when Brooks became "enraged." Birchfield stated that he told Brooks to calm down, but that Brooks refused to listen. Birchfield contends that prior to Brooks walking back into his house, Birchfield told him that he was being arrested for disorderly conduct.[2]

Once Sergeant Spradling arrived on the scene, the officers approached Plaintiff's front door and told Brooks to come outside. Brooks admits that he did not answer the front door where the officers were standing and exited from a side door "moving fast." Brooks claims he was in shock from the banging on the door, and that the events after the knock are "a blur." However, it is undisputed that after Brooks ran from the house, Spradling caught him and pulled an arm behind his back. It was at that time that Brooks claims that Birchfield "ran from the front

---

[2] Plaintiff contends that the differing explanation of the incident prior to the arrival of Sergeant Spradling creates a genuine dispute of material fact. However, the Court looks to the circumstances present at the time of arrest, not at the alleged time the officer decided to arrest. See Tinkle, 655 F.2d at 623. Accordingly, the factual disputes surrounding the initial contact between Birchfield and Brooks are not dispositive to the Motion for Summary Judgment.

7

door full speed over to me . . . and I throwed my hand up to keep him from running over me. I pulled my hand away from Spald - - Spradling and it hit Birchfield in the chest." Brooks admits that the force caused Birchfield to stumble a little. Both officers then grabbed Brooks and attempted to take him down to effectuate the arrest. Brooks' wife and daughter were both yelling at him to "just lay down." Brooks admits that he then laid down, landing on his hands and knees and was arrested. Brooks doesn't remember anything said after the knock on the door and does not remember much of the incident due to his "state of shock."

The Court finds that qualified immunity for Officer Birchfield and Sargeant Spradling is appropriate for the arrest. Brooks admits to attempting to cause bodily injury to Birchfield by hitting him in the chest with his hands. Moreover, he clearly testified that he pulled his arm away from Spradling, and he struggled against the officers when they were trying to effectuate the arrest. Accordingly, the Court finds that probable cause to arrest Plaintiff was present.

*First Amendment*

"[T]he First Amendment is violated in 'ordinary citizen' cases if the individual engaged in conduct protected by the First Amendment and the government took action against the person because of that protected conduct." Kinney v. Weaver, 367 F.3d 337, 358 (5th Cir. 2004) (citation omitted). The Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the] arrest." Reichle v. Howards, --- U.S. ---, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). The Fifth Circuit reached that same conclusion in Keenan v. Tejeda explaining that, in a case where the alleged retaliation took the form of a Fourth Amendment seizure, "[i]f probable cause existed, . . . or if reasonable police officers could believe probable cause existed," the officers are entitled to qualified immunity on the First

Amendment claim. 290 F.3d 252, 262 (5th Cir. 2002). For the reasons set forth above, this is precisely such a case. Officers Birchfield and Spradling are entitled to qualified immunity, and the claims against them in their individual capacities are dismissed.

*Excessive Force*

Plaintiff has additionally submitted an excessive force claim pursuant to the Fourth Amendment. Indeed, Plaintiff claims that he was never given an opportunity to submit before he was physically handled. As a result of the allegedly unreasonable force, Plaintiff claims he sustained neck and back injuries. To establish an excessive force claim under the Fourth Amendment, Brooks must demonstrate that he suffered: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005). Although a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is "directly related to the amount of force that is constitutionally permissible under the circumstances." Ikerd v. Blair, 101 F.3d 430, 434-35 (5th Cir. 1996); see also Flores v. City of Palacios, 381 F.3d 391, 399 (5th Cir. 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); Williams, 180 F.3d at 704 ("What constitutes an injury in an excessive force claim is . . . subjective—it is defined entirely by the context in which the injury arises."). Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, Ikerd, 101 F.3d at 434 n.9, and, conversely, objectively reasonable force will result in de minimis injuries only. Brown v. Lynch, 524 F. App'x 69, 79 (5th Cir. 2013). Thus, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." Id.; see also Goffney v. Sauceda, 340 F. App'x 181, 184 (5th Cir. 2009). And as long as a plaintiff has suffered "some injury," even relatively insignificant injuries and

purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force. Ikerd, 101 F.3d at 434. See, e.g., Schmidt v. Gray, 399 F. App'x 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury). But see Freeman, 483 F.3d at 417 ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force").

Whether the amount of force used is clearly "excessive" and "unreasonable" depends on "the facts and circumstances of each particular case." Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) ((quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); Brosseau v. Haugen, 543 U.S. 194, 201, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)). Under Graham v. Connor, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham , 490 U.S. at 396, 109 S. Ct. 1865. Because law enforcement officers must make split-second decisions in difficult and potentially dangerous situations, the Court evaluates the reasonableness of the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id., 109 S. Ct. 1865.

Plaintiff contends that excessive force was used by the officers when Spradling grabbed Brooks without giving any verbal command, Birchfield charged at Brooks, and both officers pushed and pulled Brooks while effectuating the arrest. Plaintiff claims that his post-arrest hospital records indicate that he suffered injuries to his neck and back and received treatment for those injuries.

Looking to the factors under Graham v. Connor, the Court is satisfied that the officers are entitled to qualified immunity. The officers could have believed at the time that Brooks posed an immediate threat to the safety of the officers. Indeed, once the initial contact occurred and Brooks retreated into the house, Officer Birchfield set his vehicle up in a defensive position and called for back-up. When the officers knocked on the door of the house, Brooks ran out from a side door toward the officers. It was reasonable for Spradling and Birchfield to perceive Brooks was a threat in that moment. Brooks himself admitted that he was experiencing a Post-Traumatic Stress Disorder episode after Birchfield knocked on his door, in which he perceived there to be "enemy combatants" outside his home. The Court cannot conclude based on these facts that the officers were objectively unreasonable in the use of force used in effectuating the arrest.

*Conclusion*

Officer Birchfield and Sergeant Spradling are entitled to qualified immunity for the incidents giving rise to this lawsuit on January 2, 2012. The individual capacity claims against those officers are dismissed. Defendants' Motion for Summary Judgment [57] is GRANTED, and this case is DISMISSED.

SO ORDERED, this the 1st day of May, 2014.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**